[L. A. No. 22926. In Bank. May 11, 1954.]

ELSAN H. STAFFÒRD, Appellant, v. ELLWOOD L. SHULTZ et al., Respondents.

Elsan H. Stafford, in pro. per., for Appellant.

Fulcher & Wynn, Highsmith & Allen and Bauder, Gilbert, Thompson & Kelley for Respondents.

CARTER, J.—Plaintiff appeals from judgments[1] of dismissal entered upon the sustaining without leave to amend of all defendants' demurrers to his fifth amended complaint.

Plaintiff, Elsan H. Stafford,[2] in his fifth amended com-

---

[1]The following matter is not raised by any of the parties but appears from the record. On *November 19, 1952,* judgment of dismissal was entered for defendants Shultz and Meier whose demurrer had been sustained without leave to amend on *November 12, 1952.*

On *January 5, 1953,* judgment of dismissal was entered in favor of defendant Arthur Ferree whose demurrer had been sustained, without leave to amend, on *December 3, 1952.*

On *January 7, 1953,* judgment of dismissal was entered in favor of defendants William Kelpien and Elizabeth Kelpien whose demurrer had been sustained, without leave to amend, on *October 31, 1953* [sic].

On *January 7, 1953* (by the same judgment as that which related to defendants Kelpien) judgment of dismissal was entered as to defendant John D. Gillis whose demurrer had been sustained, without leave to amend, on *October 31, 1953* [sic].

In other words, there are three separate judgments of dismissal in this case. Plaintiff's single notice of appeal was filed on January 8, 1953 and specifically noticed an appeal from each of the three judgments.

[2]Plaintiff appears in propria persona. His complaint is rambling and inartistically drawn. It shows a lack of knowledge of the legal principles involved in this type of action. I have endeavored to set forth the facts, as he alleges them, in somewhat more logical order so as to facilitate understanding of the principles involved. The complaint itself is set up in two causes of action as to each defendant, or group thereof. The allegations of the first cause concern the alleged negligent acts of the various defendants with separate paragraphs for each defendant, or group thereof; the second cause of action incorporates, by reference, the allegations of the first and, in addition, contains allegations of fraudulent representations and concealment on the part of each defendant, or group thereof.

plaint ("For damages occasioned by Malpractice and Because of False representations") alleges, substantially, as follows:

*Statement of Facts*: Plaintiff alleges that on or about February 25, 1949, during the time when he was a deputy sheriff of the county of Los Angeles and while acting in the line of duty, he was wounded in the left leg by the accidental discharge of his pistol. He states that the bullet pierced his left leg about eight inches above the knee; that he was taken to the Angeles Emergency Hospital and placed under the care of defendants Ellwood L. Shultz, Woodrow Meier and Arthur Ferree for treatment; that prior to that time he was in good health and all his body members and functions were intact and unimpaired.

### First Cause of Action Against Defendants Shultz, Meier, and Ferree

Plaintiff alleges that from the time of the injury until about March 6, 1949, he was under the care of the above-named defendants; that on the day of the injury, his injured leg was X-rayed; that he did not know, but that defendants did know, the extent of his injuries; that plaintiff is informed and believes that after the bullet pierced his left leg, it coursed downward and lodged on the exterior side thereof about six inches above the ankle; that in its course, the bullet damaged a section of the popliteal (knee area) artery about one inch in length but did not completely sever it; that the bullet severed the sciatic nerve. He alleges upon information and belief that while under anaesthetic these defendants removed the bullet, severed and removed the damaged section of the popliteal artery and ligated (tied or bound) the severed ends but that said defendants "then made no effort to repair either said damaged artery or said severed Sciatic Nerve." He states that the care and treatment given him consisted of blood transfusions, sedatives, penicillin injections, ice packs, and occasional dressing of the wound and incision; that during the ten days these defendants treated him, the calf of his left leg remained considerably extended "by reason of neglect of said defendants to remove said accumulated blood." He alleges that in order to effect a cure, defendants should have repaired the artery and nerve; should have removed the accumulated blood. He alleges that defendants had the means to obtain knowledge as to whether or not his leg was infected whereas he had no such knowledge or means of obtaining the same. He then alleges that defendants neglected to take any additional X-ray pictures of his left leg.

Plaintiff further alleges that on April 12, 1949, he was again placed under the care of defendants Shultz, Meier and Ferree for treatment which consisted of sedatives, penicillin injections and occasional dressing of the wounds; that from April 12, 1949 until September 15, 1949, only one X-ray was taken which was on May 5, 1949. He alleges that during this time, considerable pus drained from the incisions; that he was almost continually confined to his bed; that he ran a temperature and had chills and was delirious; that during this time his health became impaired and the incisions did not heal. He alleges that defendants should have repaired the artery and nerve, cleansed the infection from the leg and combated the infection of the bones which was present on May 5, 1949, and thereafter.

### Second Cause of Action Against Defendants Shultz, Meier, and Ferree

Plaintiff alleges that during the three weeks these defendants treated him, they represented to him that they had severed and ligated only one of the two arteries into which the popliteal artery branches; that it was not then necessary to repair or restore either the damaged artery; or the severed sciatic nerve "in order to effect a cure" of the left leg; that the accumulated blood in the injured leg would be absorbed by natural process; that plaintiff believed said representations to be true and relied thereon.

### First Cause of Action Against Defendants William Kelpien and Elizabeth Kelpien

Plaintiff alleges that about March 6, 1949, he was removed to the Beverly Hospital in Montebello and placed under the care of these defendants where he remained for about three weeks; that the treatment given him by these defendants consisted of sedatives, penicillin injections and the occasional dressing of his wounds. He alleges that in order "to have insured a cure" of his leg, these defendants should have repaired the damaged popliteal artery and sciatic nerve; should have removed the accumulated blood from the injured leg and should have kept the leg free from infection; that they neglected to take any X-ray pictures of the leg; that they had means of obtaining the knowledge as to whether the bones of the leg were infected whereas he had no such knowledge or means of obtaining the same.

## SECOND CAUSE OF ACTION AGAINST DEFENDANTS
### WILLIAM KELPIEN AND ELIZABETH KELPIEN

That during the three weeks these defendants treated him, they represented that they knew the facts of his case; that they would effect a cure of the left leg; that it was not necessary to repair the artery which defendants Shultz, Meier and Ferree had severed and ligated, or to repair the severed sciatic nerve in order to effect a cure; that the accumulated blood would be absorbed by natural process; "that they knew the condition of said left leg without taking X-ray pictures thereof; that the proper measures were being taken to guard against infection of said left leg"; that plaintiff believed said representations to be true and relied thereon.

## FIRST CAUSE OF ACTION AGAINST DEFENDANT
### JOHN D. GILLIS

That about March 29, 1949, plaintiff was removed to the Good Samaritan Hospital and placed under the care of defendant Gillis for treatment where he remained for about two weeks; that during this time an anaesthetic was administered to him for the purpose of making skin grafts over the incision in the popliteal space of his left leg. He alleges on information and belief that while he was under the anaesthetic, defendant Gillis made the skin grafts and several other incisions and drained therefrom "fully five hundred cubic Centimeters of old blood clots and pus matter." He alleges that when he was discharged from the hospital on April 12, 1949, considerable pus matter was still draining from the incisions and that he was not then cured; that to have insured a cure, defendant should have repaired the damaged artery and the severed nerve and should have thoroughly cleansed the leg of all accumulated old blood clots and pus matter and "to have taken proper measures to guard against infection" and to "combat any infection"; that plaintiff had no way of knowing whether infection had developed in the bones of the leg but that defendant had the means of obtaining such information; that defendant neglected to take X-ray pictures of the injured leg.

Plaintiff further alleges that about September 2, 1949, defendant Gillis informed him that the condition of the left leg was seriously endangering plaintiff's general health; that the left leg would never be of "any material use and benefit"; that the left leg should be amputated; that plaintiff believed and relied on these representations and "became interested in saving his life and lost interest in saving his left leg."

### Second Cause of Action Against Defendant John D. Gillis

Plaintiff alleges that during the time he was under this defendant's care, the defendant represented to him that it was reasonable to expect a cure of his left leg; that it was not necessary to repair and restore the severed and ligated artery in "order to effect a cure"; that he knew the condition of the leg without taking X-rays thereof; that all the old accumulated blood and pus would adequately drain from the incisions in the calf; that no infection was then present; that plaintiff believed these representations to be true and relied thereon.

Plaintiff alleges that his leg was amputated by defendant Gillis on September 22, 1949, at about midthigh; that he is informed and believes that with the application of the proper knowledge and skill the left leg could have been saved.

Plaintiff alleges that during all the time defendants were caring for him, he was in no condition to make an investigation and had no means of discovering why his left leg was not cured; that the defendants led him to believe at all times prior to September 2, 1949, that his leg would be cured.

Plaintiff alleges that on August 2, 1950, the State Compensation Insurance Fund of California served upon him copies of reports made by certain of these defendants (Shultz, Meier, Ferree and Gillis) which showed that the popliteal artery, and not one of the branches, had been damaged; that the X-ray taken on May 5, 1949, disclosed that ostitis, periostitis, "possibly approaching the Osteomyelitis stage" had developed in the left leg and had infected the bones thereof; that on September 16, 1949, the infection had spread throughout the tibia and fibula of the left leg as far as the knee joint and that the knee joint and lower part of the femur were infected.

As to all defendants, it is alleged that plaintiff had no information or belief as to when his leg became infected; or as to which defendant was treating him at the time; that all defendants contributed to his infection and neglected to combat or cure the same; that none of the defendants ever consulted him concerning his case or the treatment thereof; that all the defendants were "careless, negligent and unskillful in diagnosing plaintiff's case and in prescribing for and treating him and his left leg; that all the defendants lacked the necessary knowledge and skill to properly diagnose plaintiff's case and properly prescribe for and treat him and his

left leg''; ''that the acts and omissions of the defendants were the direct and proximate cause of great and irreparable loss and damage unto plaintiff.''

As to all defendants it is alleged that their representations were made by them without reasonable grounds upon which to base them and that said representations were false; that had he known the falsity thereof, he would have required the services of competent physicians and surgeons to care for him; that had he known the facts disclosed by the reports, he would have ''commenced this action for damages well within one year of the commission by the defendants of the acts and omissions complained of.''

All defendants demurred, either singly, or in groups, on the grounds that no cause of action had been stated; that several causes of action were not separately stated; that the complaint was uncertain, ambiguous and unintelligible in specified particulars; and that plaintiff's cause of action, if any, was barred by the provisions of section 340(3) of the Code of Civil Procedure.

## CAUSE OF ACTION

All defendants demurred to plaintiff's fifth amended complaint on the ground that it did not state facts sufficient to constitute a cause of action against each of them.

In *Greninger* v. *Fischer*, 81 Cal.App.2d 549, 552 [184 P.2d 694], a malpractice case, defendants' general and special demurrers were sustained without leave to amend. The court reversed the judgments entered thereon. It was held there that ''It is quite obvious that these allegations set forth a legal duty, breach thereof, proximate causation and resulting damage. That is all that is required. In this state negligence may be pleaded in general terms, and that is as true of malpractice cases as it is of other types of negligence cases. Moreover, in a malpractice case, it is sufficient, at least as far as a general demurrer is concerned, to aver that certain treatment was negligently administered by defendant to plaintiff's damage without alleging in what respect the treatment may have been deficient. (*Guilliams* v. *Hollywood Hospital*, 18 Cal.2d 97 [114 P.2d 1]; *Rannard* v. *Lockheed Aircraft Corp.*, 26 Cal.2d 149 [157 P.2d 1]; *Criss* v. *Angelus Hospital Assn.*, 13 Cal. App.2d 412 [56 P.2d 1274]; *Abos* v. *Martyn*, 31 Cal.App.2d 705 [88 P.2d 797]; *Smith* v. *Beauchamp*, 71 Cal.App.2d 250 [162 P.2d 662]; see notes 33 Cal.L.Rev. 248, 264; 35 Cal.L. Rev. 267, 269.)''

Plaintiff here has alleged that he was under the exclusive care of each defendant, or group thereof, for certain specified periods of time; that these defendants were at all times practicing as physicians and surgeons in the county of Los Angeles. These allegations are sufficient to show the relationship of patient and physician between plaintiff and defendants and the legal duty flowing therefrom. Plaintiff alleged in detail the negligent acts and omissions of all defendants and that as a direct and proximate result thereof, he was injured and suffered damage thereby. While inartistically phrased and set forth, it appears clearly that the allegations of the complaint are sufficient to state a cause of action (without reference to the statute of limitations) against all defendants. As is hereinafter set forth, plaintiff's second cause of action, which incorporated the allegations of the first, was also sufficient in alleging facts adequate to toll the statute of limitations.

## STATUTE OF LIMITATIONS

All defendants demurred to plaintiff's complaint on the ground that it was barred by the provisions of section 340, subdivision 3, of the Code of Civil Procedure. In *Huysman* v. *Kirsch*, 6 Cal.2d 302, 306 [57 P.2d 908], we held that an action by a patient against a physician for injuries sustained by the former, by reason of the negligent or unskilled treatment of the latter, is an action sounding in tort and not upon a contract. Such an action is therefore barred by the provisions of subdivision 3 of section 340 of the Code of Civil Procedure one year after the date of the injury. It is apparent from the allegations in plaintiff's complaint so far as his first cause of action is concerned, that the negligent acts and omissions complained of took place more than one year prior to the commencement of the action with the filing of the original complaint on *September 12, 1950*. The demurrers, with the exception of that of defendant Gillis were, without more appearing, well taken to the first cause of action.

In the second cause of action, however, plaintiff alleges that defendants made certain misrepresentations to him concerning the treatment necessary to "effect a cure" of his leg; that they misrepresented the extent of his injury; that they neglected to repair the injured artery and nerve and represented to him that such repair was not necessary to "effect a cure"; that they represented to him that they knew the condition of his leg without taking X-ray pictures; that all

of these representations were made without reasonable grounds upon which to base them; that the representations were false and that had he known the falsity thereof, he would have required the services of competent physicians to care for him and, further, would have brought his action well within the one-year period. As heretofore noted, plaintiff is appearing in propria persona and his complaint is most awkwardly drawn. From the allegations thereof, it appears that he is charging all defendants with negligent treatment and care and with the failure to make a correct diagnosis by reason of a failure to take X-ray pictures of his leg as well as with a fraudulent concealment from him of his true condition while assuring him that they knew the condition of his leg without taking X-ray pictures thereof; that he is charging all defendants with falsely representing to him that it was reasonable to expect a cure of his leg.

Taking the allegations of the complaint as true, as we are bound for the purpose of this appeal to do, it would appear that plaintiff's leg was amputated on *September 22, 1949* and that he first knew of the necessity therefor on *September 2, 1949*. He further alleges, however, that defendants Shultz, Meier and Ferree had made reports to the State Insurance Compensation Fund, based on X-rays taken by them on *May 5, 1949*, which disclosed that ''Ostitis, Periostitis, possibly approaching the Osteomyelitis stage, had developed in said left leg and infected the bones thereof''; and that ''on or about August 2, 1950, the State Compensation Insurance Fund of California, served copies on plaintiff of [these] reports made by certain defendants of plaintiff's case. That plaintiff had no reason to believe and did not know said reports had been made or existed, before said time.'' The essence of these allegations is that while plaintiff knew his leg would have to be amputated and that it was later amputated, he did not know that the amputation was necessary because of the negligent care given him by the defendants until on August 2, 1950, he received the reports made by them.

The rule has been stated (*Pellett* v. *Sonotone Corp.*, 55 Cal.App.2d 158, 160 [130 P.2d 181]) that the statute of limitations does not commence to run until the plaintiff discovered his injury, or through the use of reasonable diligence, should have discovered it (*Bowman* v. *McPheeters*, 77 Cal. App.2d 795, 798 [176 P.2d 745]; *Sears* v. *Rule*, 27 Cal.2d 131, 147 [163 P.2d 443]). We must then determine whether the knowledge received by plaintiff on September 2, 1949, that

his leg must be amputated put him on notice that defendants had been guilty of negligence in the treatment and care thereof. (See also *Agnew* v. *Larson,* 82 Cal.App.2d 176, 182 [185 P.2d 851]; *Faith* v. *Erhart,* 52 Cal.App.2d 228, 230 [126 P.2d 151]; *Petrucci* v. *Heidenreich,* 43 Cal.App.2d 561, 562 [111 P.2d 421]; *Marsh* v. *Industrial Acc. Com.,* 217 Cal. 338 [18 P.2d 933].)

In *Bowman* v. *McPheeters,* 77 Cal.App.2d 795, 800 [176 P.2d 745], the court said: "Perhaps the most significant feature in the present case which makes inapplicable the doctrine of constructive notice is the existence of the relationship between the parties of physician and patient, which in contemplation of law is a fiduciary one. (20 Cal.Jur., p. 1072, § 20.) As fiduciaries it was the duty of defendants to make a full and fair disclosure to plaintiff of all facts which materially affected his rights and interests. This principle has been applied and expressed in one form or another in several recent decisions dealing specifically with the question of fraudulent concealment of a cause of action in its relation to the statute of limitation. (*Hansen* v. *Bear Film Co., Inc.,* 28 Cal.2d 154, 178-179 [168 P.2d 946]; *Sears* v. *Rule,* 27 Cal.2d 131, 148 [163 P.2d 443]; *Bollinger* v. *National Fire Ins. Co.,* 25 Cal.2d 399, 411 [154 P.2d 399]; *Pashley* v. *Pacific Elec. Ry. Co., supra* [25 Cal.2d 226 (153 P.2d 325)], at page 235.)"

In *Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 440 [159 P.2d 958], it was said that it was recognized in cases involving a fiduciary relationship that "facts which would ordinarily require investigation may not excite suspicion, and that the same degree of diligence is not required" of the injured person. (See also *Rutherford* v. *Rideout Bank,* 11 Cal.2d 479, 486 [80 P.2d 978, 117 A.L.R. 383]; *Bainbridge* v. *Stoner,* 16 Cal.2d 423, 430 [106 P.2d 423].) In *Pashley* v. *Pacific Elec. Ry. Co.,* 25 Cal.2d 226, 235 [153 P.2d 325], we said: "As determined in those cases, the confidence growing out of the relationship of doctor and patient imposed upon the physician the duty of refraining from fraudulent concealment, that is, the duty of disclosure when he had knowledge of the facts. . . . Where there is a duty to disclose, the disclosure must be full and complete, and any material concealment or misrepresentation will amount to fraud sufficient to entitle the party injured thereby to an action. (*Kimball* v. *Pacific Gas & Elec. Co., supra,* at p. 219 [220 Cal. 203 (30 P.2d 39)]; *Vance* v. *Supreme Lodge, supra* [15 Cal.App. 178 (114 P. 83)].) Since its voluntary undertaking placed upon

the defendant the duty to disclose to the plaintiff the full extent of his injuries and the probable future disability to be expected therefrom, its false representation designed to conceal facts known to it and intended to prevent plaintiff's consulting other physicians and thus hinder him from bringing action until after the running of the statutory period of limitations, must be deemed to amount to fraud upon the plaintiff and to excuse any greater diligence on his part under the facts disclosed by the complaint. No fact as to the plaintiff's condition is alleged which could be deemed to have put him on earlier notice.''

It would appear from the foregoing, that the fiduciary relationship of physician and patient excused plaintiff from greater diligence in determining the cause of his injury and that he was not, therefore, put on notice by the knowledge received by him on September 2, 1949 that his leg was to be amputated, that the cause thereof was negligence on the part of these defendants.

In *Kimball* v. *Pacific Gas & Elec. Co.*, 220 Cal. 203, 210 [30 P.2d 39], this court said: ''We are of the opinion, however, that independent of statute, a fraudulent concealment by the defendant of the facts upon which a legal common-law action is based, under the proper circumstances, tolls the statute until discovery and that upon discovery the statute applicable to that particular action (in this case sec. 340, subd. 3, of Code Civ. Proc.) then commences to run.'' And held (p. 215) : ''We, therefore, hold that the better view and the one supported by the cases in this state and by the weight of authority elsewhere is that as far as a legal action for personal injuries is concerned, the fraudulent concealment by the defendant of the facts upon the existence of which the cause of action depends tolls the statute, and such statute does not begin to run until the discovery by plaintiff or until by reasonable diligence the plaintiff should have discovered the facts.'' It was held there that even though plaintiff pleaded fraud and concealment to toll the statute, the same rules should apply as if section 338, subdivision 4, of the Code of Civil Procedure[3] were relied upon. The court, quoting from *Original Min. & Mill Co.* v. *Casad*, 210 Cal. 71, 75 [290 P. 456], said: ''It will be discovered upon an

---

[3]''An action for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.'' (Code Civ. Proc., § 338, subd. 4.)

analysis of the above cases that there are three major allegations that must be contained in the complaint before it will be held sufficient: 1. The complaint must allege when the fraud was discovered; 2. The circumstances under which it was discovered and, 3. Facts must be alleged to show that plaintiff is not at fault for failing to discover the fraud sooner, and that the plaintiff has no actual or presumptive knowledge of facts sufficient to put him on inquiry.''

Plaintiff alleged that on August 2, 1950, he discovered that defendants Shultz, Meier and Ferree had knowledge of the seriousness of his condition, through reports theretofore made by them to the State Compensation Insurance Fund. As we have heretofore seen, the confidential relationship existing between a patient and his physician or physicians would excuse plaintiff from any greater diligence on his part. It would appear, therefore, that plaintiff's second cause of action alleges sufficient facts to toll the statute of limitations.

As to defendant Gillis, plaintiff alleges that his leg was amputated by this defendant on *September 22, 1949,* and that ''plaintiff is now informed and believes and placing his allegations on that ground alleges that with the application of the proper knowledge and skill said left leg could still been [sic] saved and have been of use and benefit to plaintiff.'' While, again, the phraseology of the allegations leaves much to be desired, it is apparent that the gravamen of the complaint against defendant Gillis is that the amputation could have been avoided by proper, skillful care and treatment. A further allegation charges that as a ''direct and proximate result'' of the ''careless, neglignece [sic] and unskillful acts . . . [and] omissions . . .'' of all defendants, plaintiff suffered the amputation of his leg, etc. ▆ It is also apparent that this first cause of action against defendant Gillis is not barred by the statute of limitation inasmuch as plaintiff's original complaint was filed on September 12, 1950. ▆ Defendant Gillis is also charged with fraudulent misrepresentations and concealment and from what has been heretofore said, it appears that defendant Gillis is estopped from taking advantage of the statute of limitation. We said in *Pashley* v. *Pacific Elec. Ry. Co., supra,* 25 Cal.2d 226, 231, ''In reality the ground of relief is that the defendant, having by fraud or deceit concealed material facts and by misrepresentations hindered the plaintiff from bringing an action within the statutory period, is estopped from taking advantage of his own wrong.''

There is an additional reason why the demurrers as to the second cause of action were not well taken. Plaintiff alleged that his leg was amputated on September 22, 1949. ▉ If, as has been said (*Kimball* v. *Pacific Gas & Elec. Co., supra,* p. 214): "... the rule is well settled that in a malpractice case the statute starts to run from the *date of the injury* ..." (emphasis added), then plaintiff's action was within the period limited for the commencement of such an action inasmuch as the original complaint was filed *September 12, 1950*. If he is deemed to have acquired knowledge of the negligence of these defendants at the time his leg was amputated, then his action was commenced in time. ▉ It appears, however, that he should not be deemed to have acquired such knowledge, or notice, until he received the copies of the reports of defendants Shultz, Meier and Ferree on August 2, 1950, for until that time he did not have knowledge, or notice, that defendants knew, and concealed from him, the seriousness of his condition.

### DEMURRER OF DEFENDANTS SHULTZ AND MEIER

▉ These defendants also demurred on the ground that several causes of action were united but not separately stated. Plaintiff's complaint as heretofore noted, sets forth in numbered, separate paragraphs the allegations as to each defendant, or group thereof, and consists of two causes of action as to each defendant, or group thereof. It has been pointed out that the allegations of the first cause of action are sufficient to state a cause of action for negligence and those of the second to toll the statute of limitations. This ground of demurrer is not well taken. Each cause of action against each defendant or group thereof is stated separately not only as to defendants but as to the period of time during which plaintiff was under the care and treatment of such defendant, or defendants. If the demurrer was meant to be on the ground that causes of action against these defendants were improperly joined, that contention is answered adversely to defendants by reason of the rule set forth in *Kraft* v. *Smith,* 24 Cal.2d 124, 129, 130 [148 P.2d 23], a malpractice case. We said there: "Although the complaint before us is far from being a model of clarity, conciseness, or consistency, it does fairly appear therefrom that plaintiff Wanda Kraft sustained certain severe physical injuries, that the defendants were severally and successively employed to treat such injuries, that each defendant was negligent in the treatment he administered,

and that as a proximate result of the negligence of one or the other or both of the defendants the plaintiff Wanda Kraft sustained further injury. . . . Certainly neither defendant is liable for any injury caused by the independent tort of his co-defendant, to which he himself did not proximately contribute. If upon the trial it develops that neither defendant was guilty of negligence then no prejudice will have been occasioned by their joinder in the one action. If it develops that only one defendant was negligent in his treatment the assessment of the verdict will be simple. If, on the other hand, it appears that negligence of both defendants contributed proximately to cause an injury for which plaintiff is entitled to recover, it may be a matter entailing great difficulty of proof as to the amount in which each defendant is responsible.'' And: ''The facts that defendants are not joint tort feasors but independent wrongdoers, and that their negligence operated successively rather than concurrently in time to produce the injury, are not vetitive of the right of joinder. The salutary procedure afforded by sections 379a, 379b and 379c of the Code of Civil Procedure is clearly intended to be available upon a showing *either* that the negligence of two or more persons, whether joint, independently concurrent, or successive, contributed proximately to cause the injury for which recovery is sought, *or* that the injury for which recovery is sought was proximately caused by the negligence of one or another or several of two or more persons and, as to each person who is not charged absolutely, that a reasonable uncertainty, requiring determination of some factual or legal issue, exists in respect to alternative or quantitative liability.'' (Pp. 130, 131.)

It appears then that this ground of demurrer was not well taken and should not have been sustained.

These defendants also demurred upon the ground that the complaint was uncertain, unintelligible and ambiguous in that it could not be ascertained whether the negligence on their part consisted of a failure to keep the leg free from infection or negligence in prescribing for and treating the leg; and that it cannot be ascertained whether they are charged with negligence in failing to repair the artery and nerve and in failing to remove accumulated blood and, if so, whether plaintiff is charging that any damage resulted; and that it cannot be ascertained what acts defendants are charged with failure to perform in order to have properly combated an infection.

The gravamen of plaintiff's complaint is that defendants neglected properly to care for his leg as a result of which the leg was amputated, to his damage and loss. ▮ As was said in *Greninger* v. *Fischer, supra,* 81 Cal.App.2d 549, 552, it was not necessary for plaintiff to allege in what respect the treatment given him might have been deficient so long as the allegations of the complaint charged the breach of a legal duty, proximate causation and resulting damage.

▮ Matter in a pleading which is not essential to the claim is surplusage; probative facts are surplusage and may be stricken out or disregarded. (21 Cal.Jur., p. 24, § 11; *Brea* v. *McGlashan,* 3 Cal.App.2d 454, 460 [39 P.2d 877]; *Kidwell* v. *General Petroleum Corp.,* 212 Cal. 720, 723 [300 P. 1, 76 A.L.R. 830]; *Morlock* v. *Fink,* 81 Cal.App. 686, 690 [254 P. 578].)

It follows, therefore, that the demurrer of defendants Shultz and Meier should have been overruled.

### Demurrer of Defendant Ferree

In addition to the grounds of demurrer heretofore set forth on which all defendants demurred and which have been discussed, defendant Arthur Ferree demurred on the ground that plaintiff's first cause of action was uncertain, ambiguous and unintelligible because it could not be ascertained "how or in what manner it is contended that this demurring defendant was careless, negligent and unskillful" so far as the treatment of plaintiff was concerned. As heretofore noted, it was unnecessary for plaintiff to allege in detail the facts on which the alleged negligence of the defendant rested. ▮ Negligence may be pleaded in general terms in malpractice cases as well as in other types of negligence (*Greninger* v. *Fischer, supra,* 81 Cal.App.2d 549, 552.)

### Contentions of Defendants

▮ All defendants contend that plaintiff was put on notice of the extent of his injury because the proceedings under the Workmen's Compensation Act were "public record[s]. The plaintiff, was, therefore, put on inquiry as to everything that it disclosed and, therefore, cannot hide behind his indolence in failing to pursue that which he was bound to inquire about and thus base his claim to an extension of the statute." All defendants rely upon *Crabbe* v. *White,* 113 Cal.App.2d 356 [248 P.2d 193], *Sonbergh* v. *MacQuarrie,* 112 Cal.App.2d 771 [247 P.2d 133] and *Huysman* v.

*Kirsch,* 6 Cal.2d 302 [57 P.2d 908], in support of this contention. *Crabbe* v. *White, supra,* involved a will which had been filed for probate and the court held that a will, when filed, became a matter of public record and that means of knowledge, especially where it consisted of public records, was deemed in law to be knowledge. *Sonbergh* v. *MacQuarrie, supra,* is not in point. The court there held that a complaint not filed until two years and ten months after the alleged assault was not filed in time *in the absence of any allegation of fraud, concealment or duress on the part of defendant which would have prevented the plaintiff from ascertaining earlier that he had suffered injury at the hands of the defendant. Huysman* v. *Kirsch, supra,* holds, as heretofore set forth, that the statute of limitations should not run against a plaintiff's cause of action until that plaintiff had knowledge thereof, or should, in the exercise of due care and diligence, have acquired knowledge thereof. No authority has been cited, nor can any be found, which provides that physicians' reports to the State Compensation Insurance Fund of California shall constitute "public records" so as to give constructive notice as provided for by section 19 of the Civil Code ("Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact.") It would appear, therefore, that there is no merit to this contention of defendants.

All defendants, with the exception of Dr. Ferree, contend that plaintiff's complaint does not state a cause of action because " [I]t is fundamental that a surgeon does not undertake to perform a cure, nor does he contract to use the highest degree of care, but will use ordinary care and skill as tested by the practice of responsible members of his profession in his community." This, it would appear, is a matter of evidence and not a valid contention upon an appeal from a judgment entered after the sustaining, without leave to amend, of a demurrer to a complaint. As we said in *Huysman* v. *Kirsch, supra,* 6 Cal.2d 302, 313: "However, statements of counsel in their briefs relative to the evidence which may be produced at the trial have no bearing upon the question of the sufficiency of a complaint, and cannot be considered by the court in passing upon that question. (*Stone* v. *Imperial Water Co.,* 173 Cal. 39, 43 [159 P. 164].)"

Defendant Feree contends that plaintiff's allega-

tions concerning the allegedly false representations made to him did not concern existing facts "but were in the nature of a prophecy as to the events to happen in the future." It is argued that the question, in such a case, is whether the belief was actually and honestly entertained by those making the representations. This, too, would appear to be a matter of evidence (*Huysman* v. *Kirsch, supra*) and not a valid objection to the sufficiency of the complaint. It is said that this contention has even more merit when considered in view of the fact that a physician does not insure and guarantee cures. *Rasmussen* v. *Shickle,* 4 Cal.App.2d 426 [41 P.2d 184], cited in support of this contention involved the granting of a motion for a nonsuit, and the court was concerned with the *evidence* produced by the parties.

 Defendants' argument as to misjoinder of parties defendant found in their briefs has no merit in view of the fact that no demurrer was interposed on that ground (Code Civ. Proc., § 430) and in view of the discussion heretofore set forth.

For the foregoing reasons the judgments are and each of them is reversed.

Traynor, J., Spence, J., and Bray, J. pro tem.,* concurred.

Edmonds, J., concurred in the judgment.

---

*Assigned by Chairman of Judicial Council.