[No. D011190. Fourth Dist., Div. One. June 13, 1990.]

HARVEY TORRES, a Minor, etc., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
P. O. DAILY et al., Real Parties in Interest.

**COUNSEL**

Sheldon Deutsch and Catherine M. Beaudry for Petitioner.

No appearance for Respondent.

McInnis, Fitzgerald, Rees, Sharkey & McIntyre, Richard D. Barton, Lisa A. Tillman, Virginia R. Gilson and Dan Deuprey for Real Parties in Interest.

## OPINION

**TODD, J.**—Petition for writ of mandate to direct respondent superior court to grant a motion to preclude petitioner Tony Torres's former treating physician from testifying as a defense expert witness on the medical negligence standard of care employed by subsequent treating physicians and for a protective order prohibiting ex parte communication by defense counsel with the former treating physician. Petition denied in part and granted in part.

### FACTS

After sustaining a spinal cord injury during heart surgery, Harvey Torres, through his guardian ad litem, Tony Torres (Torres), sued real parties in interest P. O. Daily, M.D.; UCSD Medical Center; Robert Reichman, M.D.; and David Sahn, M.D. (collectively Real Parties), for damages for medical malpractice. On August 24, 1979, six years before the surgery, Allan Goodman, M.D. (Goodman), as medical director of the Earl Taylor Non-Invasive Vascular Laboratory at Donald N. Sharp Memorial Community Hospital, reviewed the results of a coarctation study performed on Torres. Goodman prepared a letter report, dated August 24, 1979, which contained his opinion of Torres's heart condition, based upon the coarctation study.

In their exchange-of-expert witness list, Real Parties in this malpractice action designated Goodman as an expert witness "with regard to liability, causation and damages." Torres's motion for an order limiting Goodman's testimony to percipient factual observations was denied, the trial court finding no physician-patient fiduciary relationship between Torres and Goodman and stating the trial judge could determine whether testimony proffered by Goodman was relevant.

Torres argued unsuccessfully Goodman was a treating physician and could not be called as an expert in support of the Real Parties. Defense attorney Lisa A. Tillman, in her declaration in opposition to this petition, states: "Dr. Goodman told me that his August 24, 1979 report was based only on interpretation of exercise test data and that he had no additional or further contact with the patient. Dr. Goodman also told me that he has no

independent recollection of this patient. Dr. Goodman represented to me that, as the director of the Sharp Memorial Hospital Vascular Laboratory for the past 13 years, he has reviewed thousands of these tests."

### DISCUSSION

■ Torres concedes a "limited waiver" of the statutory physician-patient privilege where the patient files an action putting his physical condition in issue. Torres argues, however, that the doctor still owes the patient a fiduciary duty to refuse affirmative assistance to his patient's adversary in litigation respecting his physical condition.

All parties suggest it is a matter of first impression in California whether a nonparty physician who treated a malpractice claimant may testify as an expert for the defense. The record before us does not indicate any intent to probe any privilege-protected areas in Goodman's testimony. We interpret the record before us to mean Goodman will review factual information about the diagnosis and treatment delivered by respondent physicians and render his expert opinion on the adequacy of their professional efforts.

The pertinent portion of the statutory physician-patient privilege is found in Evidence Code[1] section 994. Section 994 reads in pertinent part: "Subject to Section 912 and except as otherwise provided in this article, the patient, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between patient and physician if the privilege is claimed by:

"(a) The holder of the privilege;

"(b) A person who is authorized to claim the privilege by the holder of the privilege; or

"(c) The person who was the physician at the time of the confidential communication, but such person may not claim the privilege if there is no holder of the privilege in existence or if he is otherwise instructed by a person authorized to permit disclosure." An exception is set forth in section 996. Section 996 reads in pertinent part: "There is no privilege under this article as to a communication relevant to an issue concerning the condition of the patient if such issue has been tendered by:

"(a) The patient;

---

[1] All statutory references are to the Evidence Code unless otherwise specified.

"(b) Any party claiming through or under the patient;"

The privilege is designed to protect "confidential communications between patient and physician." (§ 992.) This phrase is defined to include "information obtained by an examination of the patient, transmitted between a patient and his physician in the course of that relationship and in confidence . . . and includes a diagnosis made and the advice given by the physician *in the course of that relationship.*" (§ 992, italics added.)

On the record before us, we find no information sought by Real Parties which is included in the confidential communications protected by the privilege. Goodman's expert opinions on the diagnosis and treatment rendered by respondent physicians will not violate the privilege.[2]

We are left with the question of Goodman's ability to accept employment as Real Parties' expert in light of any fiduciary duty created through his professional relationship with Torres. Goodman is not a party to these proceedings. Any question of the propriety of Goodman agreeing to testify as an expert for Real Parties is governed by statute (see Bus. & Prof. Code, §§ 2263, 2220, 2221). Questions of unprofessional conduct by physicians are determined by special legislatively created boards with the ultimate power to suspend or revoke a physician's right to practice. While the *unauthorized* violation of a professional confidence constitutes unprofessional conduct within Business and Professions Code section 2263,[3] there is no conflict between that proscription and the waiver provisions contained in section 996. Once the patient waives his right to confidentiality by putting his physical condition in issue by filing suit, any disclosure pertinent to the issues in litigation within the scope of section 996 is permitted.

Torres contends the fiduciary duty created through the physician-patient relationship precludes Goodman from testifying for the defense at all.

---

[2] It is possible Goodman must consider and divulge information obtained through his earlier review of Torres's test results in evaluating respondents' actions. Torres may invoke the privilege when formal discovery or proffered trial testimony reflect this circumstance. The trial court must then determine whether Torres has waived his privilege to protect Goodman's confidential report by bringing the malpractice action concerning his heart problem. In other words, the six-year period between Goodman's test evaluation report and the current treatment must then be weighed, along with other evidence, to determine whether the necessary physician-patient relationship exists now so as to permit invocation of the privilege. Further, the trial court would also be required to determine whether Torres's malpractice action constitutes a waiver within section 996, subdivision (a). These issues are not ripe for determination at this time since we are unaware of the precise parameters of Torres's claim. It is possible further discovery will disclose Goodman's report is totally unrelated to the subject matter of the present action.

[3] Business and Professions Code section 2263 reads: "The willful, unauthorized violation of professional confidence constitutes unprofessional conduct."

Torres cites *Bowman* v. *McPheeters* (1947) 77 Cal.App.2d 795 [176 P.2d 745], *Stafford* v. *Schultz* (1954) 42 Cal.2d 767 [270 P.2d 1], and *Nelson* v. *Gaunt* (1981) 125 Cal.App.3d 623 [178 Cal.Rptr. 167], as authority for the existence of the fiduciary duty. These cases all recognize such a duty but do not consider the problem here—whether the duty prohibits adversary testimony by a treating physician.

Torres relies on *Alexander* v. *Knight* (1962) 197 Pa.Super. 79 [177 A.2d 142], a Pennsylvania superior court decision cited with approval by the New Jersey Supreme Court in 1985 in *Stempler* v. *Speidell* (1985) 100 N.J. 368 [495 A.2d 857, 864, 50 A.L.R.4th 699], as follows: "An equally if not more important interest of the plaintiff, although not specifically pressed before us, is the desire to preserve the physician's loyalty to the plaintiff in the hope that the physician will not voluntarily provide evidence or testimony that will assist the defendant's cause. See *Alexander* v. *Knight, supra*, 197 Pa.Super. at 79, 177 A.2d at 146 (Members of the medical profession 'owe their patients more than just medical care for which payment is exacted; there is a duty of total care; that includes and comprehends a duty to aid the patient in litigation, to render reports when necessary and to attend court when needed. That further includes a duty to refuse affirmative assistance to the patient's antagonist in litigation.') . . . ."

These cases clearly prohibit a treating physician from voluntarily providing opinion testimony adverse to the patient's interests in malpractice litigation. Torres argues the Hippocratic oath provides basic support for this position in its language: " 'The regimen I adopt shall be for the *benefit of my patients* according to my ability and judgment, *and not for their hurt or for any wrong.*' " (See *Huffman* v. *Lindquist* (1951) 37 Cal.2d 465, 484 [234 P.2d 34, 29 A.L.R.2d 485] (dis. opn. of Carter, J.).)

Several states have adopted the contrary view. In *Orr* v. *Sievert* (1982) 162 Ga.App. 677 [292 S.E.2d 548], the Georgia Court of Appeals reviewed an appeal from a summary judgment for defendant doctors charged with negligently diagnosing and treating a brain abscess condition for a minor plaintiff. After determining the filing of the suit constituted a waiver of the physician-patient privilege, the court stated: "Furthermore, we discern no restraint upon a doctor who has entered into a patient-doctor relationship and treated a patient from rendering an appropriate opinion as to the nature and quality of treatment afforded the same patient for the same course of illness by another physician where contention has arisen that the treatment afforded has resulted in medical malpractice. Once a patient places his care and treatment at issue in a civil proceedings [*sic*], there no longer remains any restraint upon a doctor in the release of medical information concerning the patient within the parameters of the complaint. To hold otherwise

would allow a patient to restrain a doctor who possesses the most relevant information and opinions from responding to inquiries as to such information or giving such opinions without a written authorization, court order or subpoena." (295 S.E.2d at p. 550.)

The *Orr* opinion was quoted and cited with approval in *Trujillo* v. *Puro* (1984) 101 N.M. 408 [683 P.2d 963], a New Mexico Court of Appeal decision rendered in 1984. There, a subsequent treating ophthalmologist submitted an affidavit in support of a motion for summary judgment filed by the defendant eye surgeon following cataract surgery. In the absence of a statutory privilege, Trujillo asserted the fiduciary duty incident to the doctor-patient relationship "requires a duty of confidentiality and loyalty to his patient." (683 P.2d at p. 966.) Relying on *Orr*, the court reversed the trial court order precluding use of the treating doctor's affidavit. (*Id.* at p. 967; see also *Green By Green* v. *Maness* (1984) 69 N.C.App. 292 [316 S.E.2d 917], and *Wheeldon* v. *Madison* (S.D. 1985) 374 N.W.2d 367, malpractice cases where treating physicians were permitted to testify for the defense over objection.)

We are persuaded the better rule is to permit Goodman to testify for the defense in the case at bar. When the statutory physician-patient privilege is not violated, we believe the need for truth outweighs any claimed privacy interest resulting from the test report reviewed by Goodman six years before the questioned surgery.

We also note the Legislature, in statutes authorizing expert witness fees, contemplated treating physicians would give opinion testimony. Code of Civil Procedure section 2034, subdivision (i)(2), provides in part: "A party desiring (A) to depose any [nonparty designated expert], or (B) to depose any *treating physician or other treating health care practitioner who is to be asked to express an opinion* during the deposition, shall pay the reasonable and customary hourly or daily fee for the actual time consumed in the examination of that expert by any party attending the deposition." (Italics added.)

Similarly, Government Code section 68092.5, subdivision (a), contains parallel language requiring expert witness fees be paid to a treating physician asked to express his or her opinion at trial. (See Cal. Expert Witness Guide (Cont.Ed.Bar Supp. 1989) § 6.30, pp. 136-137.)

The two sections envision a scenario where a treating physician is also an expert witness. Certainly the sections do not limit a physician asked for his or her expert opinion to giving testimony favorable only to the patient/claimant. The provisions indicate there is no blanket prohibition on expert testimony by a treating physician. Whether a particular physician

agrees or declines to express an opinion is an ethical, not an evidentiary, concern.

■ Finally, we consider the manner in which defense counsel below should gather information from Goodman. While the ex parte interview process may be time efficient and cost effective, we believe Torres's right to ensure no violation of his statutory privilege occurs in an ex parte interview dictates this discovery should be limited to the statutorily mandated manner.

## DISPOSITION

The petition is denied insofar as it seeks to preclude Goodman's testimony. Providing discovery does not disclose a basis for further invocation of the physician-patient privilege, Goodman may testify as an expert witness for the defense in all proceedings below.

The petition is granted as to further ex parte communication between Goodman and Real Parties. The trial court is directed to restrict pretrial communications concerning this litigation between Goodman and defense representatives to formal discovery conducted pursuant to the Code of Civil Procedure in order that Torres will have a reasonable opportunity to preclude an improper violation of his privilege. After such discovery, if Real Parties show that Goodman's expert testimony will not impinge on Torres's physician-patient privilege, the trial court may then permit ex parte communications between Goodman and Real Parties as may be necessary for trial preparation.

Work, Acting P. J., and Nares, J., concurred.

Petitioner's application for review by the Supreme Court was denied August 16, 1990.