384 So.2d 897 (1980)
Julian WORRELL and Roselynn Worrell, His Wife, et al., Appellants,
v.
JOHN F. KENNEDY MEMORIAL HOSPITAL, INC., et al., Appellees.
Nos. 78-750, 78-869.
District Court of Appeal of Florida, Fourth District.
May 28, 1980.
Rehearing Denied July 10, 1980.
*898 David T. Price of Price & Byrne, Fort Lauderdale, for appellants.
Jack Miller of Brennan, McAliley, Hayskar & McAliley, West Palm Beach, for appellee, John F. Kennedy Memorial Hospital, Inc.
Marjorie Gadarian of Jones, Paine & Foster, P.A., West Palm Beach, for appellees, Stanley Dober, M.D., Alan B. Cohen, M.D., and H. John Richmond, M.D.
BERANEK, Judge.
This is an appeal by plaintiffs from an adverse final judgment based on the statute of limitations. The plaintiffs sued defendants/appellees who were physicians and a hospital. The complaint alleged that defendants negligently administered and/or monitored an overdose of a particular drug resulting in the death of plaintiffs' son, a minor. The death was alleged to have occurred almost simultaneously with the treatment on January 14, 1973. The question is whether the eventual suit based on the alleged medical malpractice and death of the child was barred by the applicable statute of limitations. In response to the complaint, the defendants filed answers denying negligence and affirmative defenses based on the statute of limitations. Motions for summary judgment were filed by each defendant raising the statute of limitations as a defense. In these motions it was stated that the plaintiffs' cause of action accrued on January 14, 1973. Plaintiffs filed no Reply seeking to avoid the defenses pursuant to Rule of Civil Procedure 1.100(a). The trial court granted summary judgment in all defendants' favor based upon the statute of limitations.
On appeal plaintiffs assert the defendants/doctors fraudulently concealed their alleged negligence and that plaintiffs did not become aware of the true cause of the minor's death until December, 1976. There were no pleadings supporting the argument of concealment nor were there pleadings alleging when plaintiffs actually became aware of the alleged malpractice. These arguments on appeal are based only upon comments in depositions.
On January 13, 1977, plaintiffs filed a medical mediation claim which proceeded to a hearing before a mediation panel and a decision on July 18, 1977.[1] After the panel's *899 decision, suit was filed on August 31, 1977. The trial court thereafter granted summary judgment for all defendants and plaintiffs now seek reversal.[2] In summary the important dates are as follows:

 January 14, 1973  death and alleged unknown malpractice
 December, 1976  plaintiffs contend they became aware of malpractice and
 cause of action
 January 13, 1977  medical mediation claim filed
 July 18, 1977  decision by medical mediation panel
 August 31, 1977  suit filed.

Our decision requires tracing the development of the statute of limitations as applicable to medical malpractice claims and to wrongful death claims. In the early 1940's the limitations in effect were Section 95.11(4) and (6), Florida Statutes (1943).
These provisions were:
Actions other than those for the recovery of real property can only be commenced as follows:
* * * * * *
(4) WITHIN FOUR YEARS  Any action for relief not specifically provided for in this chapter.
* * * * * *
(6) WITHIN TWO YEARS  An action by another than the state upon a statute for a penalty or forfeiture; an action for libel, slander, assault, battery or false imprisonment: an action arising upon account of an act causing a wrongful death.
Under this statute, medical malpractice was governed by the four-year provision of subsection (4), and wrongful death by the two-year provision of subsection (6). No statutory distinction was made between death due to medical negligence and death due to any other negligence. The accrual of a wrongful death cause of action occurred at time of death, rather than notice of the defendants' negligence.
This general scheme of a four-year limit and two-year limit was maintained and continued substantially unchanged for a number of years through the late 1960's last appearing as Section 95.11(4) and (6), Florida Statutes (1969). A change occurred in the 1971 legislative session via Laws of Florida 71-254. Section 95.11(6) was amended as follows:
(6) Within two years  An action by another than the state upon a statute for a penalty or forfeiture; an action for libel, slander, assault, battery or false imprisonment; an action arising upon account of an act causing a wrongful death; an action to recover damages for injuries to the person arising from any medical, dental, optometric, [podiatric] or chiropractic treatment or surgical operation, the cause of action in such case not to be deemed to have accrued until the plaintiff discovers, or through use of reasonable care should have discovered, the injury.
This Act, Section 95.11(6), Florida Statutes (1971), took effect July 1, 1972, and removed medical malpractice from the prior four-year limitation and placed it within the two-year limitation. This amendment was the first "notice accrual" statute in that the cause of action for injuries from medical malpractice was deemed to have accrued only when the plaintiff had notice of the injury. A reading of subsection (6) quoted above leads us to the conclusion that there was no intention to include wrongful death within the Notice accrual provisions applicable to injuries from medical treatment. Thus, the limitation provided for wrongful death remained two years from death. See St. Francis Hospital Inc. v. Thompson, 159 Fla. 453, 31 So.2d 710 (1947); *900 Fletcher v. Dozier, 314 So.2d 241 (Fla. 3d DCA 1975); Walker v. Beech Aircraft Corp., 320 So.2d 418 (Fla. 3d DCA 1975); Moorey v. Eytchison & Hoppes, Inc., 338 So.2d 558 (Fla. 2nd DCA 1976); and Gaboury v. Flagler Hospital, Inc., 316 So.2d 642 (Fla. 4th DCA 1975). As stated in Fletcher v. Dozier at 241 and 242, "The cause of action accrues and the statute commences to run on the date of such death." This is the statute which was in effect on January 14, 1973, the date of death involved in the instant case.
An amendment to Section 95.11(6), Florida Statutes (1971), occurred in Laws of Florida 73-333, effective August 5, 1973, when the word "podiatric" was removed, and the word "chiropodial" substituted.
The next substantive amendment applicable to medical malpractice occurred in the 1974 legislative session as Laws of Florida 74-382, effective January 1, 1975. This change appeared as Section 95.11(4)(a) and (c), Florida Statutes (Supp. 1974), and accomplished a substantial re-wording of the general statute of limitations section. The subsections in question were 95.11(4)(a) and (c), providing:
(4) Within two years. 
(a) An action for professional malpractice, whether founded on contract or tort; provided that the period of limitations shall run from the time the cause of action is discovered or should have been discovered with the exercise of due diligence; provided, however, that the limitation of actions herein for professional malpractice shall be limited to persons in privity with the professional;
* * * * * *
(c) An action for wrongful death.
Under the 1974 amendment the two-year limitation for wrongful death was maintained and the accrual provisions regarding medical malpractice were changed from discovery of the "injury" to discovery of the "cause of action." This amendment was effective for two weeks before January 14, 1975, which was the point in time two years from the date of death of plaintiffs' minor son herein. If this statute had the effect of extending the statute of limitations, then plaintiffs should be able to take advantage of it. This statute containing the words "cause of action" was in existence for only four months and 20 days.
In the 1975 legislative session, Laws of Florida 75-9, effective May 20, 1975, was passed and again substantially revised the statute of limitations on medical malpractice. In accordance with this amendment Section 95.11(4)(b) and (d), Florida Statutes (1975), provided as follows:
95.11 Limitations other than for the recovery of real property. Actions other than for recovery of real property shall be commenced as follows:
* * * * * *
(4) WITHIN TWO YEARS
* * * * * *
(b) An action for medical malpractice shall be commenced within two years from the time the incident occurred giving rise to the action, or within two years from the time the incident is discovered, or should have been discovered with the exercise of due diligence, provided, however, that in no event shall the action be commenced later than four years from the date of the incident or occurrence out of which the cause of action accrued. An action for medical malpractice is defined as a claim in tort or in contract for damages because of the death, injury, or monetary loss to any person arising out of any medical, dental, or surgical diagnosis, treatment, or care by any provider of health care. The limitation of actions within this subsection shall be limited to the health care provider and persons in privity with the provider of health care. In those actions covered by this paragraph where it can be shown that fraud, concealment, or intentional misrepresentation of fact prevented the discovery of the injury within the four-year period, the period of limitations is extended forward two years from the time that the injury is discovered or should have been discovered with the exercise of due diligence, but in no event to exceed seven *901 years from the date the incident giving rise to the injury occurred.
* * * * * *
(d) An action for wrongful death.
Once again, the notice accrual provision was changed; the words "cause of action" were stricken and the words "incident or occurrence" substituted. For the first time, a definition of medical malpractice was specifically stated and included death although the two-year wrongful death subsection (d) remained unchanged. This statute places a four-year limitation (not extension) on the bringing of the action from the original incident regardless of when the incident is discovered or a seven-year limitation if fraudulent concealment is involved. There had been no such four-year or seven-year limitations in the prior statutes.
With this statutory history, when did plaintiffs' claim for death resulting from medical malpractice accrue? The statutes, as indicated above, have continually redefined the starting point. In summary, Section 95.11(4) and (6), Florida Statutes (1969), did not specifically mention medical malpractice and it was thus within the four-year limitation of subsection (4). While the statute of limitations for wrongful death has remained at two years throughout, the accrual provision regarding medical malpractice has been repeatedly changed. The words, "injury", "cause of action", and "incident", have been used at various times.
With the above evolution in mind, did the Legislature mean to include "death" within the notice accrual provisions of the medical malpractice statutes of limitations before the clear rewording of Section 95.11(4)(b), Florida Statutes (1975), which specifically included death? We answer this question in the negative. We conclude that death due to medical malpractice was not included within the notice accrual provision of Section 95.11(6), Florida Statutes (1973), nor within the notice accrual provision of Section 95.11(4)(a), Florida Statutes (Supp. 1974). We thus hold that prior to May 20, 1975 (the effective date of Laws of Florida 75-9), a cause of action for death due to medical malpractice accrued as of the date of the death and not when plaintiff became aware of the medical negligence causing death. This was the law when the death occurred herein and it was not changed before the cause of action became time-barred on January 15, 1975. It is thus unimportant whether the 1973 or the 1974 statutes are applied as they do not extend the limitation period and the claim was not filed within two years of death. Appellants urge we adopt the reasoning of Glass v. Camara, 369 So.2d 625 (Fla. 1st DCA 1979), and apply Section 95.11(4)(b), Florida Statutes (1975), in a retroactive fashion.[3] We decline to do so. Glass involved a death on May 29, 1974, and two years from this date was May 29, 1976  well after the effective date of Section 95.11(4)(b), Florida Statutes (1975). Here the two years ran before the effective date of the 1975 amendment.
The case of Brooks v. Cerrato, 355 So.2d 119 (Fla. 4th DCA 1978), involved a medical malpractice injury claim where the act of malpractice occurred on February 8, 1973. In an opinion written by Judge Alderman, this court applied Section 95.11(6), Florida Statutes (1973). We believe that the same statute is applicable here. In Brooks one question was whether Section 95.11(4)(a), Florida Statutes (Supp. 1974), should be applied retroactively. Brooks held Section 95.11(4), Florida Statutes (Supp. 1974), should not be given retroactive application to medical malpractice cases and that the saving clause (Section 95.022) was no indication of a retroactive intent regarding medical malpractice. We adhere to this ruling *902 and recede from the holding of Nash v. Asher, 342 So.2d 1038 (Fla. 4th DCA 1977), to the extent it is contrary.[4]
We thus hold that Section 95.11(6), Florida Statutes (1973), applies to this case and that the cause of action for death due to medical malpractice herein accrued at the time of the death. In doing so we point out we would prefer the different result reached in Glass v. Camara, supra, under Section 95.11(4)(b), Florida Statutes (1975), wherein death was expressly included within the definition of medical malpractice. This 1975 statute was the first time death was so included and we are bound by this legislative expression. The complexity of the situation is aggravated by the numerous changes in the medical malpractice statute. The Legislature seemingly reacts session by session to the pressures of the legislatively recognized medical malpractice crisis.
The law started with a four-year limitation on negligence including medical negligence. It was then changed to a two-year limitation on medical malpractice with the two years running from the date plaintiff should have discovered the "injury." This created an open-ended statute without apparent limit on discovery. It was then changed to a two-year limit from the date plaintiff should have discovered the "cause of action." Again, there was no time limit on discovery. In all of these versions, death was not included in the definition of medical malpractice and "wrongful death" was always limited to two years from death by a separate provision. The statute has now been changed to two years from discovery of the "incident" with an outside four-year limit unless fraudulent concealment is involved where a maximum of seven years is set. In this latest enactment death is at last expressly included in the definition of medical malpractice. Appellant simply cannot rely on this latest statute and the argument for retroactivity is without merit.
Yet to be discussed is the issue of fraudulent concealment. Plaintiffs contend they filed their claim shortly after becoming aware of the malpractice and that their delay was due to the doctors' concealment. Proctor v. Schomberg, 63 So.2d 68 (Fla. 1953), and Nardone v. Reynolds, 333 So.2d 25 (Fla. 1976) establish the general proposition that fraudulent concealment of negligence by a physician would toll any applicable statute of limitations. This is a traditional concept of law and has been specifically held applicable in medical malpractice cases. Brooks v. Cerrato, supra, and Glass v. Camara, supra. These cases place the burden on the defendant in a summary judgment to negate any possible issue of fact as to when plaintiff became aware of the cause of action. Here, though, the cause of action accrued at death and the claim is time-barred unless the statute was tolled. Plaintiffs argue for the first time on appeal that defendants fraudulently concealed their malpractice and that this should toll the statute. Obviously, the defendants could not have negated fraudulent concealment since they had no idea it was an issue in the case. The complaint did not mention the fraudulent concealment and did not allege when plaintiffs became aware of the alleged malpractice. The defendants' answer, affirmative defense of statute of limitations and motion for summary judgment asserted that plaintiffs' cause of action accrued on January 14, 1973, the date of death. Plaintiffs did not file a Reply to avoid this defense.
If plaintiffs wished to rely on a tolling of the statute of limitations under the traditional concepts of fraudulent concealment enunciated in the above cited cases, then a Reply should have been filed raising the issue. There is nothing in the record before the trial court nor argued on this appeal indicating that the hospital/defendant was involved in the alleged concealment in any respect. We, therefore, affirm the summary judgment for the defendant, John *903 F. Kennedy Memorial Hospital. As to the doctors/defendants the situation is distinguishable. Glass v. Camara, supra, and various authorities cited and discussed therein are clearly to the effect that a plaintiff seeking to avoid a statute of limitations in while or part on the grounds of fraudulent concealment must reply to avoid the defendant's assertion of the statute of limitations. Although we conclude that the summary judgment for the physicians/defendants was appropriate, we are compelled to consider whether an amendment might be proper under the rationale of Hart Properties, Inc. v. Slack, 159 So.2d 236 (Fla. 1964), and Forte v. Tripp, 339 So.2d 698 (Fla. 3d DCA 1976), and numerous similar authorities.
The trial court was not presented with a formal request to amend to assert concealment as a reason for tolling the statute. There is considerable confusion among the authorities as to the respective burdens of pleading and proof in summary judgments based upon the statute of limitations. As indicated in Glass v. Camara, supra, the cases seem to reach different conclusions based upon the particular reason relied upon to toll an applicable statute of limitations. Therefore, under the particular circumstances presented here, we conclude that an amendment may be proper. Although we conclude that plaintiffs had the duty to file a reply, this may be cured by amendment. We thus hold that as to the defendants/doctors the matter is remanded for consideration and ruling on any amended pleadings which may be offered by plaintiffs in accordance with the foregoing on the issue of fraudulent concealment.
AFFIRMED IN PART, REMANDED FOR FURTHER PROCEEDINGS.
DAUKSCH, JAMES C., and SCHWARTZ, ALAN R., Associate Judges, concur.
NOTES
[1] The pleadings contained in the record on appeal state two dates as to the filing of the mediation claim. The date of January 13, 1977, is given, along with the date of January 18, 1977. There is no sworn support in the record for either date despite the fact that much argument is made about it in the motions and memoranda filed in the trial court. We accept the date of January 13, 1977, because this is the date all parties have argued in the briefs before this court.
[2] Both sides engage in arguments that Section 95.11(4)(b), Florida Statutes (1975), effective May 20, 1975, extended the statute of limitations on medical malpractice death cases to four years and question whether this statute should be given retroactive effect. Plaintiffs also argue this statute's application to their contention that the defendants/doctors fraudulently concealed their negligence. There is simply no four-year extension within this statute. Instead the statute limits the period for discovery of the incident to four years.
[3] It is not completely clear whether Glass v. Camara, 369 So.2d 625 (Fla. 1st DCA 1979), applied Section 95.11(4)(a), Florida Statutes (Supp. 1974), effective January 1, 1975, or Section 95.11(4)(b), Florida Statutes (1975), effective May 20, 1975. Although the opinion states that the later statute is being applied, the opinion quotes from the earlier 1974 statute and relies specifically on the language "that the period of limitations shall run from the time the cause of action [was] discovered or should have been discovered" which is contained in the 1974 statute [Section 95.11(4)(a), Florida Statutes (Supp. 1974)], rather than in the later 1975 statute.
[4] This holding has been previously announced in Garofalo v. Community Hospital, 382 So.2d 722 (4th DCA 1980).