409 So.2d 20 (1982)
Gabriel A. SANCHEZ, M.D., et al., Petitioners,
v.
Morris WIMPEY and Elsa Wimpey, Respondents.
No. 59762.
Supreme Court of Florida.
January 14, 1982.
James F. Page and Philip H. Trees of Gray, Adams, Harris & Robinson, Orlando, and G. William Bissett, Jr. of Preddy, Kutner & Hardy, Miami, for petitioners.
R. Fred Lewis of Kuvin, Klingensmith & Lewis, Miami, and Charles Rubenstein of Grossbard & Rubenstein, Davie, for respondents.
ALDERMAN, Justice.
We granted review of the decision of the district court in Wimpey v. Sanchez, 386 So.2d 1241 *21 (Fla. 3d DCA 1980), because the District Court of Appeal, Third District, in deciding that the jurisdiction of the medical mediation panel terminates ten months from the date the claim is filed, notwithstanding that no hearing was commenced within six months of the filing, has created conflict with Raedel v. Watson Clinic Foundation, Inc., 360 So.2d 12 (Fla.2d DCA 1978), approved, 384 So.2d 151 (Fla. 1980), as well as other decisions recognized by the district court in the present case as being contrary to its decision. Recently, in Aguilar v. Community General Hospital, 396 So.2d 149 (Fla. 1981), we again made it clear that where no hearing is begun within six months after the mediation claim was filed, the jurisdiction of the mediation panel terminates after six months. We therefore quash that portion of the district court's opinion holding that jurisdiction terminated after ten months and its concomitant holding that the statute of limitations was therefore tolled for ten months.
Alternatively, the district court held that, even if the jurisdiction of the medical mediation panel terminated six months after the claim was filed and the statute of limitations was tolled for six months rather than ten, the trial court's dismissal of the cause was error because the record did not establish as a matter of law that the malpractice action was filed untimely. Although petitioners now attempt to argue the merits of this holding, they do not assert and we do not find that this holding conflicts with any decision of this Court or another district court of appeal. In the exercise of our discretion, we decline to consider the merits of this issue. There is no reason for us to allow petitioners a second appeal on this issue. In Jenkins v. State, 385 So.2d 1356 (Fla. 1980), we emphasized the finality of district court decisions and quoted with approval the following excerpt of Ansin v. Thurston, 101 So.2d 808 (Fla. 1958), authored by Justice Drew, which we described as setting the tone for the 1980 revision of article V, section 3, Florida Constitution:
We have heretofore pointed out that under the constitutional plan the powers of this Court to review decisions of the district courts of appeal are limited and strictly prescribed. Diamond Berk Insurance Agency, Inc. v. Goldstein, Fla., 100 So.2d 420; Sinnamon v. Fowlkes, Fla., 101 So.2d 375. It was never intended that the district courts of appeal should be intermediate courts. The revision and modernization of the Florida judicial system at the appellate level was prompted by the great volume of cases reaching the Supreme Court and the consequent delay in the administration of justice. The new article embodies throughout its terms the idea of a Supreme Court which functions as a supervisory body in the judicial system for the State, exercising appellate power in certain specified areas essential to the settlement of issues of public importance and the preservation of uniformity of principle and practice, with review by the district courts in most instances being final and absolute.
To fail to recognize that these are courts primarily of final appellate jurisdiction and to allow such courts to become intermediate courts of appeal would result in a condition far more detrimental to the general welfare and the speedy and efficient administration of justice than that which the system was designed to remedy.
385 So.2d at 1357-58.
Accordingly, the decision of the district court is quashed in part, and this cause is remanded for further proceedings.
It is so ordered.
BOYD, OVERTON and McDONALD, JJ., concur.
SUNDBERG, C.J., concurs in part and dissents in part with an opinion, in which ADKINS, J., concurs.
SUNDBERG, Chief Justice, concurring in part and dissenting in part.
Although I concur in the holding of the majority on the issue disposed of by the majority opinion, I respectfully, but firmly, *22 dissent from the majority's refusal to consider the merits of the alternative holding by the district court. Such a piecemeal approach to our review function is not only a poor utilization of judicial resources, of which there are precious few, but it is totally inconsistent with the traditional policy of this Court to fully dispose of a case once jurisdiction vests in the Court. This policy is based on sound logic and fairness to the litigants as well as the promotion of the efficient and expeditious administration of justice.
The author of Ansin v. Thurston,[*] relied on by the majority, had this to say about the proper scope of our review once jurisdiction attaches:
The second contention that we are limited in our review to the "question" is seen to be without merit by a simple analysis of the constitutional provision itself. In each of the three instances mentioned where we may exercise our judgment to review by certiorari the subject of the sentence is "any decision of a district court * * *." A decision encompasses the opinion and judgment and is generally regarded as determinative of the case, not merely a part of it. It is not the question of great public interest in a decision that we are concerned with but the decision that passes upon such a question. Needless steps in litigation should be avoided wherever possible and courts should always bear in mind the almost universal command of constitutions that justice should be administered without "sale, denial or delay." Piecemeal determination of a cause by our appellate court should be avoided and when a case is properly lodged here there is no reason why it should not then be terminated here. In the Lissenden case we said, with respect to appeals and in discussing an analogous matter "[m]oreover, the efficient and speedy administration of justice is * * * promoted" by doing so.
Zirin v. Charles Pfizer & Co., 128 So.2d 594, 596 (Fla. 1961) (footnotes omitted). This decision dealt with a petition for certiorari predicated on conflict as well as a question certified to be of great public interest. It is clear from the opinion that the policy considerations discussed in the context of certified question jurisdiction are equally applicable to the other forms of discretionary review lodged in this Court by article V of the constitution.
In the same year, Justice Hobson, writing for the Court, articulated the policy of complete review in the context of a conflict certiorari case:
Since we have concluded that, on the face of the subject opinion of the District Court, it appears there can be no doubt about the question of direct conflict with many of our prior decisions, as well as the decision of the District Court of Appeal, Third District, in Martin v. Rivera, 99 So.2d 617, it becomes our duty and responsibility to consider the case on its merits and decide the points passed upon by the District Court which were raised by appropriate assignments of error as completely as though such case had come originally to this court on appeal. We will now assume that responsibility and perform the duty which devolves upon us.
Tyus v. Apalachicola Northern Railroad, 130 So.2d 580, 585 (Fla. 1961) (footnotes omitted). The policy of entertaining all issues raised in the case was reaffirmed by the Court as recently as 1977 in Bould v. Touchette, 349 So.2d 1181 (Fla. 1977), where there was conflict only as to one question of law, but the Court rejected the suggestion by one of the respondents that review be limited to that question.
The same principle concerning the scope of review has obtained in cases which come to the Court on direct appeal. P.C. Lissenden Co. v. Board of County Commissioners, 116 So.2d 632 (Fla. 1959).
A court in at least one other jurisdiction has reached the same conclusion respecting the duty to entertain the entire case once jurisdiction vests. Under statutory jurisdictional authority similar (for our purposes) to that of our Court under article V *23 of the Florida Constitution, the Supreme Court of Texas concluded:
Carefully weighing all the terms of the 1917 act, we have no doubt that, in a case coming within its appellate jurisdiction under subdivisions 1 to 5 of article 1521, the Supreme Court is not only clothed with the power, but is charged with the duty, to determine all properly presented questions of law requisite to a correct decision of the case.
Holland v. Nimitz, 111 Tex. 419, 430-31, 239 S.W. 185, 188 (1922). See also Ford v. Carpenter, 147 Tex. 447, 216 S.W.2d 558 (1949).
Furthermore, the very language of our jurisdictional authority implies that the entire decision of the district court is to be reviewed and not just particular issues within the decision. Article V, sections 3 and 4, Florida Constitution (1980), provide that the Supreme Court:
(3) May review any decision of a district court of appeal that expressly declares valid a state statute, or that expressly construes a provision of the state or federal constitution, or that expressly affects a class of constitutional or state officers, or that expressly and directly conflicts with a decision of another district court of appeal or of the supreme court on the same question of law.
(4) May review any decision of a district court of appeal that passes upon a question certified by it to be of great public importance, or that is certified by it to be in direct conflict with a decision of another district court of appeal.
(Emphasis supplied.) The constitution states that we may review "decisions," not issues within decisions. Hence, even though it be only a single issue within a decision which vests us with jurisdiction, nonetheless, it is the decision which is before us for review. For constitutional purposes "decision" has been construed to comprehend both the opinion and the judgment. Seaboard Air Line Railroad v. Branham, 104 So.2d 356 (Fla. 1958). If that be so then all issues encompassed (and properly raised) within the opinion or judgment of the district court were intended for review by this Court when article V was adopted by the citizens of this state. It should be noted that this direction to review "decisions" of the district courts has not been altered since its inclusion in the judicial article of our constitution in 1957.
Finally, the obligation to review the second issue in the instant case seems particularly compelling since it is the alternative holding for the district court's judgment. The policy considerations which were persuasive to those judges who preceded us and hammered out the significance and reach of the jurisdictional framework wrought in 1957 still pertain. In my judgment they dictate that we review and render judgment on all of the issues in this case.
ADKINS, J., concurs.
NOTES
[*] 101 So.2d 808 (Fla. 1958).