413 So.2d 1226 (1982)
Ann ROBERTS, a Minor, Vivienne Roberts and Michael Roberts, Individually, and As Next Friends and Guardians of Ann Roberts, Appellants,
v.
James T. CASEY, et al., Appellees.
No. 80-335.
District Court of Appeal of Florida, Fifth District.
April 21, 1982.
Rehearing Denied May 19, 1982.
*1227 Shackow & McGalliard, Gainesville, and Larry Klein, West Palm Beach, for appellants.
Andrew G. Pattillo, Jr. and L. Edward McClellan of Pattillo, MacKay & McKeever, P.A., Ocala, for appellees, James T. Casey and Florida Physicians Insurance Reciprocal.
Edwin C. Cluster of Ayres, Cluster Curry, McCall & Briggs, P.A., Ocala, for appellees Marion County Hospital Dist., etc., and St. Paul Ins. Co.
No appearance for appellee The Florida Patient's Compensation Fund.
PER CURIAM.
The appellants (Ann Roberts and her parents, suing on their own behalf and as her guardian) claim the trial court erred in granting a final summary judgment denying them any recovery against the appellees (Dr. Casey, Ann's pediatrician, Munroe Memorial Hospital and their respective liability carriers). The court ruled that the appellants' causes of action against the appellees are barred by the two year statute of limitations[1] and that section 768.44(6) of the medical mediation statute did not toll the running of the statute.
The record shows, without material dispute, that Ann Roberts was born an apparently healthy child on February 4, 1977, at Munroe Memorial Hospital. On April 5, 1977, Dr. Casey ordered her readmitted to the hospital. He treated her at Munroe for bacterial meningitis. After approximately one week, she was transferred to Shands Teaching Hospital in Gainesville because of the severity of her illness. While Ann was at Shands, Mrs. Roberts learned that her child had probably suffered severe brain damage. Mrs. Roberts also heard that other babies in the nursery at Munroe at about the time Ann was born had contracted infectious diseases, and that the hospital had been criticized for its lax visiting procedures in the maternity ward.
Mrs. Roberts stated in her deposition that she talked with Dr. Casey at the end of April, 1977, about bringing suit against the *1228 hospital. Dr. Casey said it was possible that Ann contracted the meningitis at Munroe, and he then advised her to consult an attorney.
The first question we shall consider is whether the tolling provision of chapter 768, relating to medical malpractice actions preserved appellants' cause of action. Section 768.44 provides in relevant part:
(3) The clerk shall, with the advice and cooperation of the parties and their counsel, fix a date, time, and place for a hearing on the claim before the hearing panel. The hearing shall be held within 120 days of the date the claim was filed with the clerk unless, for good cause shown upon order of the judicial referee, such time is extended. Such extension shall not exceed 6 months from the date the claim is filed. If no hearing on the merits is held within 10 months of the date the claim is filed, the jurisdiction of the mediation panel on the subject matter shall terminate, and the parties may proceed in accordance with law.
(4) The filing of the claim shall toll any applicable statute of limitations, and such statute of limitations shall remain tolled until the hearing panel issues its written decision or the jurisdiction of the panel is otherwise terminated. In any event, a party shall have 60 days from the date the decision of the hearing panel is mailed to the parties or the date on which the jurisdiction of the panel is otherwise terminated in which to file a complaint in circuit court.
A summary of the medical mediation proceedings in this case is as follows:
February 3, 1979 Medical mediation claim filed. Referee expanded time for final hearing to 6 months.
July 6, 1979 Hearing. The parties appeared but presented no evidence. They stipulated it was a valid "start-up" hearing, and agreed to continue the hearing beyond 6 months.
October 29, 1979 Final hearing scheduled but not held.
October 30, 1979 In response to motions made by appellees, referee terminated the proceedings "nunc pro tunc" effective August 3, 1979, because of lack of jurisdiction since no valid "start-up" hearing was held prior to August 3, 1979.
December 18, 1979 Suit filed in circuit court.
The question here is when did the sixty day period referred to in subsection (4) begin to run. Appellees argue that it began on August 3, 1979 because no valid "start-up" hearing was held.
It is clear that jurisdiction of the mediation panel terminates within six months unless there is a valid "start-up" hearing. This jurisdictional requirement cannot be altered by stipulation of the parties. Sanchez v. Wimpey, 409 So.2d 20 (Fla. 1982); Aldana v. Holub, 381 So.2d 231 (Fla. 1980); Diggett v. Conkling, 368 So.2d 74 (Fla. 4th DCA 1979); Raedel v. Watson Clinic Foundation, Inc., 360 So.2d 12 (Fla. 2d DCA 1978). Thus, the parties' stipulation that it was a valid "start-up" hearing was of no effect.
There being no valid "start-up" hearing within six months of February 3, 1979, the date the mediation claim was filed, the jurisdiction of the panel terminated on August 3, 1979. The appellants then had either sixty days or the time remaining under the applicable statute of limitations, whichever was greater, within which to file suit. The trial court found that the acts and omissions constituting the alleged negligence occurred and the causes of action accrued on or before April 30, 1977, the time that appellants were advised by Dr. Casey to consult an attorney. Therefore, the complaint, which was filed December 18, 1979, was well beyond the two year period plus the six months during which the statute was tolled.
This brings us to the next question. Was summary judgment improper because there remained a question of fact as to when the appellant should have discovered the incident giving rise to the malpractice claim?
*1229 The statute of limitations in a medical malpractice action begins to run when the plaintiff has been put on notice of an invasion of his legal rights. Nardone v. Reynolds, 333 So.2d 25 (Fla. 1976); Almengor v. Dade County, 359 So.2d 892 (Fla. 3d DCA 1978). This occurs when the plaintiff has notice of either the negligent act which causes the injury or the existence of an injury which is a consequence of the negligent act. Almengor at 894. Here, appellants discovered in late April, 1977, that their child's condition may have been caused by a negligent act. We hold that the statute of limitations began to run against both the hospital and Dr. Casey at this time. The fact that appellants were not aware that Dr. Casey's treatment may have contributed to the child's condition does not alter the result as appellants had been put on notice of an invasion of their legal rights at this time. Thus, the entry of summary judgment was not improper and we affirm.
FRANK D. UPCHURCH, Jr., and COWART, JJ., concur.
SHARP, J., dissents with opinion.
SHARP, Judge, dissenting
I respectfully dissent in this case on two grounds: that the medical malpractice two year statute of limitations[1] had not run because it was tolled by the provisions of section 768.44(4), Florida Statutes (1977), and to refuse to so hold violates the appellants' constitutional rights of access to the courts of this state;[2] and further, that as to Dr. Casey, the summary judgment was not properly entered because the record does not clearly and as a "matter of law" show when the appellants were aware of his alleged negligent treatment of Ann, nor the alleged increased damage to her resulting from it.
The Medical Mediation Act, Chapter 768, was declared unconstitutional prospectively only, in Aldana v. Holub, 381 So.2d 231 (Fla. 1980). In Aldana, our Supreme Court stated "It simply offends due process to countenance a law which confers a valuable legal right, but then permits that right to be capriciously swept away on the wings of luck and happenstance." 381 So.2d at 236. I would add that due process is also offended by a law which is so contradictory and confusing it successfully disguises when a constitutional right has been reborn to such an extent that reasonably knowledgable and diligent litigants cannot ascertain the life expectancy of their rights to redress in the courts.
On its face, the provisions of section 768.44(3) state that the jurisdiction of the mediation panel expires: "If no hearing on the merits is held within 10 months of the date the claim is filed... ." It has no six months "expiration" time for proceedings which do not begin within six months after the claim is filed, although the section says: "Such extension shall not exceed 6 months from the date the claim is filed" (Referring to the power of the judicial referee to extend the time to begin the hearing beyond 120 days).
The ten month provision is keyed to section 768.44(4), which provides:
The filing of the claim shall toll any applicable statute of limitations, and such statute of limitation shall remain tolled until the hearing panel issues its written decision or the jurisdiction of the panel is otherwise terminated. In any event, a party shall have 60 days from the date the decision of the hearing panel is mailed to the parties or the date on which the jurisdiction of the panel is other-wise terminated in which to file a complaint in circuit court. (Emphasis supplied).
Prior to the very recent Florida Supreme Court decision Sanchez v. Wimpey, 409 So.2d 20 (Fla. 1982), it was not at all clear that failure to hold a hearing in six months *1230 automatically terminated the jurisdiction of the panel, so as to commence the running of the sixty days to file a cause of action in court. Numerous cases dealt with the plaintiffs' rights to cut off the mediation proceedings when the six months period expired without a hearing.[3] Contrary to the statement in the majority opinion and the cases cited by it, Aldana and Diggett v. Conkling, 368 So.2d 74 (Fla. 4th DCA 1979) do not deal with this issue: When does the jurisdiction of the mediation panel "expire" for purposes of triggering the sixty day grace period to get into court?[4]
The Third District Court of Appeal held in Wimpey v. Sanchez, 386 So.2d 1241 (Fla. 3d DCA 1980),[5]reversed in part, 409 So.2d 20 (Fla. 1982), that the only jurisdictional time period in the statute which automatically terminates the panel's jurisdiction is the ten months provision  not the six months one. The court chose not to apply Rule 20.190(c), as altering a period of statute of limitations because (presumably) rules governing procedure ought not to alter substantive rights given under statutes.[6]Raedel v. Watson Clinic Foundation, Inc., 360 So.2d 12 (Fla. 2d DCA 1978) reached a different conclusion, although in that case it was the plaintiff (injured party) seeking to bring his case in court.
Further, in Aldana v. Holub, 381 So.2d 231 (Fla. 1980) the consolidated case of Abel v. Kirschbessner involved a fact pattern consistent with this case  the six months period was violated, but the panel's jurisdiction was upheld. Similarly in Ruben v. Kelley, 402 So.2d 1165 (Fla. 1981), the Florida Supreme Court held admissible at trial the findings of a panel even though the six months time period had been exceeded. See also Stockton v. Knight, 382 So.2d 1230 (Fla. 1st DCA 1980); Lustig v. McCormick, 358 So.2d 844 (Fla. 3d DCA 1978); Ludwig v. Glover, 357 So.2d 233 (Fla. 1st DCA 1978).
In view of the confusion of the courts' interpretation of the Medical Mediation Act's jurisdiction and statute of limitations provision, and the lack of clarity in the statute itself, I would apply Sanchez v. Wimpey, prospectively only, and thereby avoid the (I think) egregious and unconstitutional result in this case, which deprives appellants of their "day in court" by applying (in effect) a shorter statute of limitations period to them than to others similarly situated, and on top of that, retroactively.
I also dissent as to the summary judgment in favor of Dr. Casey. I agree the record showed, two years before appellants filed suit (and hence too late if the Medical Mediation Act did not toll the running of the two year statute)[7] that the appellants knew Ann had suffered brain damage from the bacterial meningitis which she probably became infected with shortly after her birth at the Munroe Hospital, and that the hospital's lax visiting rules or hygiene may have been responsible for the presence of the bacteria in the new-born nursery. They were therefore on notice as to the damage and the negligent act, as the majority opinion points out. Under Nardone and Almengor, they would be barred from suing the hospital.
*1231 However, aside from some technical admissions, which were self-contradictory[8] the record before the court did not show in any way that two years prior to filing the suit the appellants knew or had any notice that Dr. Casey mishandled Ann's treatment at Munroe before she was transferred to Shands. The record shows (taking all inferences in Ann's favor as we must do)[9] that Dr. Casey and his partner diagnosed Ann's illness as some form of bacterial meningitis but negligently misdiagnosed the underlying bacterium and put her on the wrong antibiotics. It also shows that Ann's parents did not know of any possible malpractice on Dr. Casey's part, for at least a year after Ann's severe illness. Mrs. Roberts continued to bring Ann and her other children to Dr. Casey as their general pediatrician, for check-ups through January of 1979.
Further, there is nothing in the record to show when the appellants learned or had notice that Ann's permanent disabilities were attributable to mistreatment by Dr. Casey. The mere fact a child has suffered permanent disabilities as a result of an attack of bacterial meningitis is not itself dispositive of the question when the parents should have discovered the doctor's alleged negligence. Bacterial meningitis is a serious disease. Permanent disability or death is not uncommon even when treatment is proper.[10] Where the malpractice and its resulting damage is masked by the fact that some permanent disability may flow naturally from the diagnosed disease, the statute of limitations should not begin to run on the latent malpractice incident at the same time. The case at bar is analogous to the misplaced sponge or instrument cases. The likelihood of some pain and discomfort following surgery masks the presence of the misplaced sponge. In the sponge case the presence of continuing pain following surgery is some evidence the plaintiff should have discovered the act of negligence; however, in the face of conflicting evidence regarding actual knowledge it is rarely sufficient to warrant summary judgment.[11]
Because the record in this case does not show when appellants knew or had reason to know of Dr. Casey's alleged malpractice and its additional effect on Ann, I think summary judgment in his favor was improperly entered.[12]
A record that is silent on a determinative issue of fact forecloses summary judgment, for the movant's burden is to `show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'
Glass v. Camara, 369 So.2d 625, 627-28 (Fla. 1st DCA 1979).
NOTES
[1] Section 95.11(4)(b), Florida Statutes (1975), which was in effect in 1977, provides:

An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence... .
[1] Section 95.11(4)(b), Florida Statutes (1977) provides:

An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered within the exercise of due diligence; ...
[2] Art. 1, § 21, Fla. Const.
[3] See Parker v. Knorr, 383 So.2d 776 (Fla. 5th DCA 1980); Serrill v. Hilderbrand, 382 So.2d 316 (Fla. 2d DCA 1979); Wright v. Ratnesar, 373 So.2d 431 (Fla. 2d DCA 1979); Cohen v. Johnson, 373 So.2d 389 (Fla. 4th DCA 1979); Hirsch v. Kleinman, 375 So.2d 362 (Fla. 4th DCA 1979); Hewitt v. Caffee, 368 So.2d 1342 (Fla. 3d DCA 1979); Diggett v. Conkling, 368 So.2d 74 (Fla. 4th DCA 1979); Shore v. Abbazia, 375 So.2d 354 (Fla. 3d DCA 1979); Raedel v. Watson Clinic Foundation, Inc., 360 So.2d 12 (Fla. 2d DCA 1978); Ballard v. Curatolo, 363 So.2d 864 (Fla. 4th DCA 1978).
[4] It is ironic to have the time period of section 768.44(3), which was intended for the plaintiffs' protection, now turned against them. See Judge Schwartz' concurring opinion in Valenstein v. Doctors Hospital, 372 So.2d 1169 (Fla. 3d DCA 1979).
[5] See also State ex rel. Love v. Jacobson, 343 So.2d 1328 (Fla. 3d DCA 1977).
[6] Adams v. Wright, 403 So.2d 391 (Fla. 1981); Art. V, § 2(a) and Art. II, § 3, Fla. Const.; S.R. v. State, 346 So.2d 1018 (Fla. 1977); Lane v. State, 337 So.2d 976 (Fla. 1976).
[7] § 95.11(4)(b), Fla. Stat. (1977).
[8] Love v. Allis-Chalmers Corporation, 362 So.2d 1037 (Fla. 4th DCA 1978), cert. dismissed, 366 So.2d 879 (Fla. 1978).
[9] Wills v. Sears Roebuck Co., 351 So.2d 29 (Fla. 1977).
[10] R. Gray, Attorney's Textbook of Medicine § 40.14 (1981).
[11] See Salvaggio v. Austin, 336 So.2d 1282 (Fla. 2d DCA 1979); cf. Leech v. Bralliar, 275 F. Supp. 897 (D.Ariz. 1967) (Pain from automobile accident and injury masking pain from negligent treatment); Stafford v. Shultz, 42 Cal.2d 767, 270 P.2d 1 (1954) (Following extended treatment of bullet wound in the leg, informing plaintiff that the leg needed to be amputated was not dispositive of the issue when the plaintiff should have discovered the treating physician's negligence); see also Perez v. Maule Industries, Inc., 413 So.2d 75 (Fla. 3d DCA 1982); Swagel v. Goldman, 393 So.2d 65 (Fla. 3d DCA 1981).
[12] Worrell v. John F. Kennedy Memorial Hospital, Inc., 384 So.2d 897 (Fla. 4th DCA 1980); Mott v. Fort Pierce Memorial Hospital, 375 So.2d 360 (Fla. 4th DCA 1979); Tetstone v. Adams, 373 So.2d 362 (Fla. 1st DCA 1979); Eland v. Aylward, 373 So.2d 92 (Fla. 2d DCA 1979); Almengor v. Dade County, 359 So.2d 892 (Fla. 3d DCA 1978); Brooks v. Cerrato, 355 So.2d 119 (Fla. 4th DCA 1978).