[L. A. No. 3110. Department Two.—August 21, 1913.]

ANDRESON COMPANY (a Corporation), et al., Respondents, v. H. REGENOLD et al., Appellants.

ACTION TO QUIET TITLE—NEW PARTIES BROUGHT IN BY CROSS-COMPLAINT.—In an action to quiet title, wherein the defense is made that the plaintiffs' grantor held the property in trust for the defendants, the court properly strikes out paragraphs of a cross-complaint by which it is sought to bring in the plaintiffs' grantor as a party and to compel him to account for the proceeds of sales to persons other than the plaintiffs of parcels of land included within the tract described in the patent, but different from the property directly in controversy.

ID.—PRE-EMPTION CLAIM—ISSUANCE OF PATENT TO HEIR INSTEAD OF TO DEVISEE—LIMITATION OF ACTIONS.—Where a testator devises his interest in an incomplete pre-emption claim to his executor, and the executor, on completing the claim after the death of the testator and ignorantly supposing that he as devisee is heir, has the patent issued to the heirs of the testator, records it in the office of the county recorder and in the land-office, takes and holds possession of the property, and several years later discloses the facts to the sole heir, a nonresident, acting at all times in good faith, the statute of limitations commences to run against the heir from the time of receiving such information, and he is then put on inquiry as to the state of the title, and cannot, thirty years afterward, invoke the law to establish his rights.

ID.—LACHES—LAW REFUSES AID TO PERSONS WHO SLEEP ON RIGHTS.—The law does not aid those who thus sleep upon their rights only to assert them when the thrift and enterprise of others have made property, once theirs, valuable and worth coveting.

APPEAL from a judgment of the Superior Court of San Bernardino County and from an order refusing a new trial. Benjamin F. Bledsoe, Judge.

The facts are stated in the opinion of the court.

Herbert H. Chase, for Appellants.

Leonard & Surr, for Respondents.

MELVIN, J.—Appeal by defendants from a judgment against them and from an order denying their motion for a new trial.

Plaintiffs sued to quiet title to certain land described in their complaint as "the northeast quarter of the northwest quarter and northwest quarter of the northeast quarter, and lots numbered six, seven and eight, all in section 18, in township one south of range 4 west, S. B. B. & M., excepting from said lands all those portions thereof that are embraced in the following described tracts of land." Certain excepted parcels were thereafter described, being parcels which had been sold from the original tract claimed by the predecessor in interest of plaintiffs, one John Andreson.

The answer and cross-complaint of defendants denied all right, title, and interest in plaintiffs and alleged that all of the land described in the complaint, including the excepted parcels, was included in a declaratory statement filed by William Regenold in 1876 under the pre-emption laws of the United States; that William Regenold died testate in the county of San Bernardino in 1876; that letters testamentary thereafter issued to John Andreson, who duly qualified as executor of the estate of said Regenold, deceased; that May 2, 1877, John Andreson, as executor of said estate filed the necessary papers to complete said claim and entered the land, for and on behalf of the heirs of said William Regenold, deceased; that on May 1, 1878, the United States of America issued its patent granting said land to the "heirs of William Regenold, deceased, and unto their heirs and assigns"; that on August 16, 1878, John Andreson caused said patent to be filed for record in the office of the county recorder of San Bernardino County; that the only heir at law of William Regenold was an uncle, Herzinth Regenold, a resident of Pennsylvania, who died in that state in 1907; that John Andreson knew of the existence and residence and relationship of William Regenold to Herzinth Regenold, but fraudu-

lently concealed from him and his heirs all knowledge of the issuance of the patent; that John Andreson had held the land as trustee for Herzinth Regenold; that these facts were all well known to the plaintiffs, who claimed as successors of John Andreson, and that the defendants and cross-complainants were entitled to the property in question as heirs of Herzinth Regenold.

In their answer to the cross-complaint, plaintiffs set up title in their predecessor, John Andreson, by prescription and pleaded the statutes of limitation. (Sec. 319, subd. 2 of sec. 336, subd. 4 of sec. 338, and sec. 343 of the Code of Civil Procedure.) They also averred that they acquired the land in good faith and without any notice of the claims of the defendants; that they and their predecessor had expended large sums of money on the tract; and that John Andreson had spent more than two hundred and fifty dollars in securing the issuance of the patent, no part of which the defendants or any one in their behalf had ever refunded or offered to repay.

The court found the death of William Regenold and the issuance of letters to John Andreson as pleaded in the cross-complaint. It was further found by the court that "William Regenold devised to the said John Andreson, all his right, title and interest in the northeast quarter of the northwest quarter of section 18, and the northwest quarter of the northeast quarter of said section 18, all in township 1 south, range 4 west, S. B. B. & M., and being a portion of said lands, embraced within said pre-emption entry, and also devised all of the residue of the property of said decedent to the said John Andreson, for the benefit of the children of said Andreson, and that thereafter, all of said property was, in accordance with the terms of said will, distributed to said Andreson by decree of distrubution duly given and made by said court." There were findings also that the preliminary papers had been filed and that the patent had been issued and recorded as alleged, but the court found against the allegations of fraud. There was a finding that Andreson did not take the patent as custodian for the heirs by reason of his office of executor, and that the patent was not taken by him to be delivered to said heirs. The court further found that "by said patent, the legal title to the lands described therein

was thereby vested in the heirs of said William Regenold, deceased, and their heirs, but that the equitable title to all of said property was thereby vested in the said John Andreson.'' The relationship and death of Herzinth Regenold were found as alleged in the cross-complaint, but the court found also that said Herzinth at the time of his death had no interest in said property. There were full findings to the effect that neither John Andreson nor his grantees had been guilty of any fraud. Among the findings was this: ''It is not true that said Herzinth Regenold never knew or heard of said property, or of the acts or doings of said John Andreson in relation thereto, and it is not true that said Herzinth Regenold had no notice, intimation or suspicion thereof until after the commencement of this suit; and it is not true that any trust relating to said property or to said patent, in favor of said Herzinth Regenold, or of said defendants, was created by or arose from any acts or doings of the said John Andreson, or that said Herzinth Regenold or said defendants or any of them, were beneficiaries of any trust in relation to or connected with any of said property.'' The court also found in favor of plaintiffs upon their plea of the statutes of limitation against the cross-complainants.

The court struck out three paragraphs of the cross-complaint by which it was sought to bring in John Andreson as a party and to compel him to account for the proceeds of the sales to persons other than the plaintiffs herein of parcels of land included within that tract described in the patent, but different from the property directly in controversy here. This was a correct ruling (*Meyer* v. *Quiggle,* 140 Cal. 498, [74 Pac. 40] ; *Clark* v. *Kelley,* 163 Cal. 209, [124 Pac. 846]), but even if it had been erroneous the error would have been immaterial because the court's finding with reference to the bar of the statutes of limitation was correct and the benefit of the statutes would have been just as available to John Andreson in a controversy relating to all of the land as to one involving only a part of it.

The greater part of the briefs of appellants is devoted to an attempt to show that John Andreson was not and could not have been acting in good faith in treating the property as his own, but we think there was ample evidence to justify the court in its conclusions upon this subject. It is true that John

Andreson subscribed the affidavit that William Regenold had made no contract by which the title should issue to a third person, and he knew that the patent was issued to the heirs, but we cannot say that these facts rendered his subsequent actions fraudulent. He knew that his friend had endeavored by will to give him all the title which that friend possessed and that the probate court had made a decree of distribution accordingly, and it was not unnatural that, under the circumstances, Andreson, a layman, should believe himself to be an "heir" of the decedent. He himself said upon this subject, in his testimony: "When I read that patent I thought it conveyed title to me, because I didn't know the difference between the word 'heir' and the word 'devisee' under the will, because at that time I could have remedied it in a little while. All I had to do was to go to Brinkmeyer and he would fix it with Mr. Regenold. I thought at that time that when a man makes a will naming parties therein, that they are his heirs: I didn't know any better." The very fact that he recorded the patent is a strong circumstance in support of the court's conclusion that he was not attempting any sort of concealment in the matter.

Respondents contend that as the patent was not issued until after the estate of William Regenold was closed and Andreson had been discharged as executor thereof, there was no fiduciary relation between Herzinth Regenold and Andreson when, thereafter, the latter took open possession of the land and proceeded to improve it and treat it as his own; but it is unnecessary to decide this question. Even if we assume that Andreson was bound, as executor, to apprise Herzinth of his action in perfecting title to the real property described in the very will by which Herzinth had received a legacy of five hundred dollars and with the terms of which he ought to have been familiar, and if we assume further that this obligation to notify Herzinth of all of his acts relating to the property continued after his discharge as executor, we would nevertheless be forced to the decision that the statutes of limitation began to run after he went to Philadelphia and told William Regenold's heir what he had done with the property. This conversation, according to Andreson, took place "in the latter part of the eighties." In the course of this conversation, as related by him, Andreson told Herzinth all about the will and

its contents.  He testified in part as follows: ''He (Herzinth) was very friendly and a very nice old gentleman; I told him the whole thing—what he done with his estate—Wilson, Goldkofer, Brinkmeyer.  He gave Brinkmeyer half of the saloon, and he gave Wilson some horses, and Goldkofer some horses, and whatever right and title he had in the land he left to me, but that is in bad form yet—only pre-empted.  I told him all about the land.  I went for that purpose.

''Q.  Will you tell me what you told him about the land?

''A.  I told him all about the land and all about the will; the whole thing.  What else can I tell you?  I told him William Regenold had pre-empted land in his lifetime.  I told him when he died he divided his estate among his friends, and left the pre-emption part to me.  I don't know what else I told him; I can't remember everything; that is over thirty years ago.  I went there for the purpose of telling him all about his nephew, William Regenold; that he lived here, what he done here, and how he settled his estate.  I am pretty positive I told him I was executor of the will.  Likely I told him that I afterwards got a patent for the pre-empted land; certainly I did; I told him all about it; I am very sure I told him about the whole thing, and all about the estate, and about his sickness and so forth.  I didn't tell him how the land was patented, as I didn't know myself; I thought the land was patented in my favor.  I told him that the patent was issued to me, as near as I know; I was always under that impression that it was issued to me, and I think so yet.''  While it is true that Andreson did not inform Herzinth that the patent was issued to the heirs of William, he did give the heir sufficient information to put him upon his inquiry.  (Civ. Code, sec. 19.)  For many years following these disclosures Herzinth Regenold rested content and made no effort to discover the true nature of the interest which the government had conveyed by reason of the pre-emption claim of his kinsman. Added to this is the fact that the patent was recorded not only in the recorder's office of San Bernardino County but also in the general land-office.  Appellants concede that recordation in the land-office gives constructive notice, but insist that such notice only runs to persons bound to search the title.  But Herzinth, if he wanted to investigate his kinsman's claim to the property upon which a pre-emption was pending when

William died, was bound to search the title. Even if his natural curiosity had not prompted him to become familiar with the provisions of a will in which he was mentioned as a legatee, the information given him by Andreson was surely sufficient to put him on his inquiry, yet he slept upon his rights and made no effort to ascertain the true state of the title which was a matter of record. The law does not aid those who thus sleep upon their rights only to assert them when the thrift and enterprise of others have made property, once theirs, valuable and worth coveting. Even if Andreson had acted fraudulently instead of showing perfect good faith, as the court found upon abundant evidence that he did, Herzinth Regenold would have had no excuse for his failure to know the contents of the recorded patent, particularly after Andreson had informed him regarding the provisions of the will. (*Hecht* v. *Slaney,* 72 Cal. 367, [14 Pac. 88]; *Tynan* v. *Kerns,* 119 Cal. 451, [51 Pac. 693].)

The court properly found that the claim of title asserted by the cross-complainants was barred by the statutes of limitation.

No other alleged errors requiring discussion, the judgment and order are affirmed.

Henshaw, J., and Lorigan, J., concurred.