[Civ. No. 15014. First Dist., Div. Two. Sept. 29, 1952.]

JOHN H. CRABBE, Appellant, v. W. T. WHITE et al., Respondents.

Crabbe & Streiff for Appellant.

Charles D. Sooy and Maurice Thorner for Respondents.

GOODELL, J.—This appeal is from a judgment entered on the sustaining of a demurrer to an amended second and supplemental complaint, without leave to amend. The action was commenced on November 20, 1946, to cancel and annul for alleged fraud a satisfaction of judgment executed on October 24, 1933, and to obtain an order directing execution to issue on the judgment.

On June 20, 1925, Mary R. Crabbe, the wife of appellant (but since deceased) was injured in an automobile accident and appellant on behalf of both spouses sued Ira O. Rhoades (in action No. 163526) for damages. They were awarded a verdict for $35,000 and Rhoades appealed. On October 28, 1929, the judgment was affirmed (*Crabbe* v. *Rhoades*, 101 Cal. App. 503 [282 P. 10]). Thereafter they were paid $10,000 by an insurance company which was applied on their judgment, and $600 was recovered on executions. On October 24,

1933, a settlement was reached between Rhoades and appellant, acting for himself and his wife, for $3,500, which was paid. The satisfaction of judgment then entered is now sought to be set aside.

On August 10, 1941, Rhoades died testate, leaving as his legatees and devisees his widow, the respondent Elizabeth S. Rhoades, and his daughter, Winnie R. White. The decree of distribution in his estate was entered on June 24, 1942, by the Superior Court in Los Angeles County, vesting approximately one-half the estate in Mrs. Rhoades and one-half in Mrs. White. Respondent W. T. White was joined herein as a defendant because on his wife's death in 1942 he succeeded to her share in the Rhoades estate.

The basis of this action is the alleged fraud of Rhoades in procuring the satisfaction of judgment, in that he is alleged to have then owned all the securities later distributed in his estate, worth approximately $80,000, but was represented at the time of the settlement as owning nothing. It is alleged that he turned over all his securities to others to defeat execution on the judgment, and had absented himself from the jurisdiction until a settlement of the judgment could be arranged by his associates, acting under the direction of his daughter.

There were numerous grounds of demurrer, with particular emphasis on the statute of limitations (Code Civ. Proc., §§ 336(1); 337(1); 338(4); 339(1) and 343), and laches. The demurrer sets forth that no creditors' claim was filed in the estate of Rhoades and that plaintiff *in the pending action* seeks an execution on a judgment entered *in a different action* (No. 163526). It also contains specifications of misjoinder and nonjoinder.

The complaint describes the securities distributed in the Rhoades estate and shows that plaintiff is seeking herein to follow those securities into the hands of the distributees and to subject them to an execution on the judgment in the first action if and when the satisfaction therein is set aside.

The satisfaction was executed over 13 years before this suit was filed but appellant alleges that the fraud was not discovered until long after 1933, and the principal question now presented for decision is whether the complaint is vulnerable to respondents' demurrer based on subdivision 4 of section 338, Code of Civil Procedure, which provides that in a fraud action the statute of limitations is three years after the discovery of the facts constituting the fraud.

■ The leading case of *Lady Washington Consol. Co.* v. *Wood,* 113 Cal. 482 [45 P. 809], holds that the complaint in a fraud case filed after the expiration of three years from the time when the fraud was committed must affirmatively show that the plaintiff did not discover the facts constituting the fraud until within three years prior to commencing the action. This is an element of the plaintiff's right of action. The court in the Lady Washington case, page 487, says that the plaintiff must show ''the times and the circumstances under which the facts constituting the fraud were brought to his knowledge, so that the court may determine whether the discovery of these facts was within the time alleged; and, as the means of knowledge are equivalent to knowledge, if it appears that the plaintiff had notice or information of circumstances which would put him on an inquiry which, if followed, would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowledge of these facts.''

The complaint alleges that in his will Rhoades ''declared that the whole of his estate was his sole and separate property acquired by him before his marriage'' which was on August 7, 1930, more than three years before the settlement. Those declarations were of the utmost importance since they ran directly counter to· the representations alleged to have been made that at the time of the settlement Rhoades had nothing and that his associates had arranged a loan of $3,500 for him.

The complaint alleges that plaintiff learned of the death of Rhoades in ''the latter part of the year 1941, when there appeared in the newspapers in San Francisco items concerning the death and estate of said Rhoades in . . . Los Angeles'' and that ''plaintiff did some time thereafter communicate with an attorney in the County of Los Angeles with a view to ascertaining the nature and value of said estate with a view to filing a claim . . . and was informed by said attorney that the said estate was of the value of approximately $80,-000.00. . . .''

If plaintiff learned of the probate of Rhoades' estate in the latter part of 1941 and the estate was distributed on June 24, 1942, as alleged, then the will must have been filed for probate some time in the latter part of 1941. ■ When so filed it became a matter of public record and plaintiff, having admittedly learned late in 1941 of the probate proceed-

ings, was immediately put upon inquiry (Civ. Code, § 19) as to everything which they disclosed. (*Hecht* v. *Slaney*, 72 Cal. 363, 366-367 [14 P. 88]; *Galvin* v. *Palmer*, 113 Cal. 46, 52-53 [45 P. 172]; *Lady Washington Consol. Co.* v. *Wood*, *supra*, 113 Cal. 482, 488; *Tynan* v. *Kerns*, 119 Cal. 447, 450-451 [51 P. 693]; *Dennis* v. *Bint*, 122 Cal. 39, 44 [54 P. 378, 68 Am.St.Rep. 17]; *Tracy* v. *Muir*, 151 Cal. 363, 370 [90 P. 832, 121 Am.St.Rep. 117]; *Andreson Co.* v. *Regenold*, 166 Cal. 44, 49-50 [134 P. 999]; *Bradbury* v. *Higginson*, 167 Cal. 553, 557-558 [140 P. 254].) ██ In *Wheaton* v. *Nolan*, 3 Cal. App.2d 401, 403 [39 P.2d 457], it is said: "Means of knowledge, especially where it consists of public records as is manifest in this case from the complaint itself, is deemed in law to be knowledge (citations)." See, also, *Consolidated R. & P. Co.* v. *Scarborough*, 216 Cal. 698 [16 P.2d 268] and *Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412, 436-439 [159 P.2d 958].

The complaint alleges that "on or about the 15th day of November, 1943 . . . plaintiff personally examined at length the last will and testament of said Ira O. Rhoades . . . in the County Clerk's office in Los Angeles" and "then and there saw that the testator . . . declared that the whole of his estate was his sole and separate property acquired by him before his marriage to said Elizabeth S. Rhoades" and further that the decree of distribution had so found.

██ In *Bradbury* v. *Higginson*, *supra*, 167 Cal. 553, 558, it was said that "a mere averment of ignorance of a fact which a party might with reasonable diligence have discovered is not enough to postpone the running of the statute (citations)." It is evident that if by an examination of the will on or about November 15, 1943, plaintiff learned for the first time, as alleged, of the testator's declarations therein—which, if true, demonstrated that the representations alleged to have been made in 1933 were false and fraudulent—he certainly could have learned of them in the latter part of 1941 when the will was filed and became a matter of public record. This he could have done by obtaining through his Los Angeles correspondent, or otherwise, a copy of the will, and thus he would have had this vital information two years earlier at small cost and by a simple, routine process in everyday use by lawyers. ██ Admittedly plaintiff promptly learned from his Los Angeles correspondent that the estate was worth approximately $80,000 and this in itself was "sufficient to put a prudent man upon inquiry" (Civ. Code, § 19), and "excite his suspicion" (see *Tarke* v. *Bingham*, 123 Cal. 163,

166 [55 P. 759]) since Rhoades was "broke" in 1933, just eight years earlier, according to the alleged representations.

The complaint asserts that plaintiff "exercised due diligence in pursuing his remedies in commencing this action under the circumstances and conditions prevailing during World War II," but that of course is nothing but a conclusion of the pleader and a very general and indefinite one at that.

The complaint also alleges that "almost immediately" after learning through his Los Angeles correspondent that the estate was valued at approximately $80,000, plaintiff communicated with one of Rhoades' associates (naming him) "and stated that there were certain securities of great value in said estate" and that this associate "did then and there state to this plaintiff that the said securities had been obtained by said Rhoades in stock transactions after the date of said settlement on or about October 24, 1933; and that this plaintiff had no reason to believe otherwise until on or about November 15, 1943" when he personally examined "carefully and at length the last will of Rhoades." Whatever force this allegation had is entirely destroyed by the fact that Rhoades' own solemn, testamentary declaration directly to the contrary was available to plaintiff as a matter of public record in the latter part of 1941. The same may be said with respect to the allegation that plaintiff was not informed by his Los Angeles correspondent, or otherwise, that the will or decree of distribution declared that the whole estate was Rhoades' sole and separate property acquired prior to his marriage in 1930.

The allegation that plaintiff did not learn of Rhoades' testamentary declaration until "on or about the 15th day of November 1943" had been contained in his first amended complaint, and when the trial judge sustained the demurrer thereto he wrote to both sides pointing out that "In *Cohn v. Wright*, 89 Cal. 86 [26 P. 643], it was held that although the words 'on or about' are sufficient for some purposes they are not sufficient where the right of a person depends upon his doing a particular thing within a definite time." Nevertheless plaintiff repeated the same allegation in the last complaint, and despite the citation supplied by the court plaintiff makes no attempt in his brief to distinguish the Cohn case or to justify such an allegation in a case such as this or to cite authority holding that any days of grace whatever may

be superadded to the three-year period. Plaintiff's "on or about" allegation is further weakened by another allegation, that about September 12, 1946, plaintiff read a decision of the appellate court which convinced him that he still had time to sue, and filed this suit *within 60 days thereafter.* It is not necessary to base this decision upon the "on or about" allegation since the complaint in its other allegations shows that there were available to plaintiff abundant means of knowledge in the latter part of 1941 approximately five years before this suit was commenced.

We see no reason to discuss any other points.

The court was clearly right in sustaining the demurrer without leave to amend.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied October 29, 1952, and appellant's petition for a hearing by the Supreme Court was denied November 25, 1952.