Filed 12/9/24  Stead Financial v. Cal. Statewide Communities Devopment CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| STEAD FINANCIAL, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CALIFORNIA STATEWIDE COMMUNITIES DEVELOPMENT AUTHORITY, <br><br> Defendant and Respondent. | A169218 <br><br> (Contra Costa County Super. Ct. No. C22-00991) |

Respondent and defendant California Statewide Communities Development Authority (Authority), "a joint powers authority," issued bonds to fund the development of a business park in the City of Tracy (City).  Under the trust agreement for the bonds, the Authority agreed that $875,000 received from SNB Tracy, LLC (SNB), one of the developers, would be deposited into a reserve fund that would be used to pay for the bonds only if other funds established by the agreement were insufficient.  Any unused monies in the reserve fund as of September 2, 2016, would be returned to SNB or its successors.

One of the other developers, however, filed for bankruptcy in 2013.  In the bankruptcy proceeding, SNB filed a creditor claim for fees and costs that it incurred for the business park development based on a cost sharing

agreement with the bankrupt developer. SNB assigned that claim to appellant and plaintiff Stead Financial, Inc. (Stead) in January 2015.

Although none of the monies in the reserve fund were returned to SNB or its successors on September 2, 2016, Stead did not inform the Authority of its claim to those monies until November 2021. After Stead and the Authority were unable to resolve their dispute over the reserve fund, Stead filed this action against the Authority. The trial court granted summary judgment for the Authority, holding that Stead's causes of action were untimely because Stead did not present its government claim to the Authority within one-year after their accrual as required by Government Code section 911.2, subdivision (a).[1]

Stead appeals, contending, among other things, that the discovery rule postponed the accrual of its causes of action. According to Stead, it did not learn about its causes of action against the Authority until it reviewed the pleadings in the bankruptcy proceeding and obtained the cost sharing and trust agreements "for the first time" in August 2021. But Stead could and should have obtained both the pleadings and the agreements no later than November 2019. Because Stead did not present its claim to the Authority until at least roughly two years later, its causes of action are time-barred. We therefore affirm.

## BACKGROUND

On September 10, 2010, the City entered into a development agreement with Tracy Gateway LLC (Tracy Gateway). Under the terms of the development agreement, Tracy Gateway was "to develop parcels of land collectively known as the Tracy Gateway Business Park" (Business Park).

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

Approximately two-and-a-half weeks later, Tracy Gateway entered into a Cost Sharing Agreement with SNB, the owner of certain parcels of land to be used for the Business Park, "to divide the costs of the [Business Park] development." Under the terms of the Cost Sharing Agreement, Tracy Gateway and SNB agreed that "all fees and costs incurred relating to the" Business Park development "shall be borne by the parties in accordance with their Proportionate Share." Tracy "Gateway's Proportionate Share [] equal[ed] 58 [percent] and [SNB's] Proportionate Share [] equal[ed] 42 [percent]." Reimbursement of the fees and costs incurred by Tracy Gateway and SNB would "occur as part of the [] bond financing" for the development. "To the extent such reimbursement does not occur from the [] bond financing, the party advancing any such fees shall retain a claim, payable on demand for funds advanced on behalf of the other party."

"On September 1, 2011, the Authority issued Statewide Community Infrastructure Program Revenue Bonds [(Bonds)] to fund the [Business Park] development . . . ." Upon issuance of the Bonds, the Authority entered into a Trust Agreement with Wells Fargo Bank, the trustee of the Bonds.

Among other things, the Trust Agreement established the Tracy Gateway Reserve Fund (Reserve Fund). The Reserve Fund, funded "by a deposit of $875,000 from the Tracy Gateway Developer," was to be used "to pay for the [B]onds in the event that the primary interest and principal funds did not have sufficient money." The Trust Agreement further provided that "[a]ny money remaining in the Reserve Fund on September 2, 2016, together with any interest earnings thereon, was to be returned to the Tracy Gateway Developer." Finally, the Agreement identified SNB "and its successors" as the " 'Tracy Gateway Developer.' "

3

On March 15, 2013, Tracy Gateway filed for bankruptcy. On August 8, 2013, SNB "filed a creditor claim" in the bankruptcy proceeding pursuant to the Cost Sharing Agreement.

SNB entered into an Assignment of Assigned Matters and Claims (Assignment Agreement) with Stead on January 28, 2015, and provided notice of the assignment in the Tracy Gateway bankruptcy proceeding on "that same day." Under the terms of that Agreement, SNB agreed to " 'transfer and assign to' " Stead " 'all of [its] right, title and interest in and to any and all present or future claims . . . with respect to any and all of its claims and money due regarding the [Business Park] Project . . . related to [its] claims as a creditor' " in the bankruptcy proceeding. (Italics and underlining omitted.) This included SNB's creditor claim.

In the Tracy Gateway bankruptcy proceeding, Rosebrook 58, LLC, (Rosebrook) purchased the parcels of land to be used for the Business Park owned by Tracy Gateway. The bankruptcy court approved Rosebrook's purchase of the parcels on June 2, 2015.

"Beginning in 2015, Rosebrook made multiple attempts over the course of [the next] several years to obtain documentation and information from the" Authority relating to the Bonds. The Authority provided Rosebrook with "some of the requested documents," including the "Trust document," in November 2019. Unlike Rosebrook, Stead did not communicate with the Authority regarding the Reserve Fund before August 2021.

In August 2021, Stead and Rosebrook obtained the pleadings in the Tracy Gateway bankruptcy proceeding. According to Stead, this allowed them to review the Trust and Cost Sharing Agreements "together for the first time." Based on this review, Stead discovered SNB's interest in the Reserve Fund. As a result, neither Stead nor Rosebrook actually knew about their

4

interests in the Reserve Fund until August 2021. Similarly, the Authority was not aware of Stead's or Rosebrook's interest in the Reserve Fund until August 2021 and remains unsure that "any funds are owed or due" to them.

On or about November 18, 2021, Stead and Rosebrook sent a joint letter to the Authority. The letter claimed, among other things, that Stead and Rosebrook "were entitled to the money in the Reserve Fund." In December 2021, the Authority "offered to settle all matters . . . for a single payment to" Stead and Rosebrook "of $875,000." In May 2022, the Authority informed Stead and Rosebrook that it "did not know or agree that [they] are the successors in interest to the" Reserve Fund and therefore needed them "to provide the" Authority "with immunity from potential third parties with claims over the funds to receive any payment."

Rather than agree to the terms proposed by the Authority to resolve the dispute, "Stead and Rosebrook separately submitted written claims against the Authority to the California Department of General Services" (Department) on March 21, 2022. Even though they had already submitted their claims to the Department, Stead and Rosebrook sent a letter to the Authority on April 6, 2022, stating that they "would file a government claim against the Authority with" the Department. In its response dated May 13, 2022, the Authority explained that the submission of any claims to the Department "would not satisfy the requirements of the Government Claims Act."

Stead and Rosebrook filed this action on May 12, 2022. In the complaint, Stead alleged seven causes of action against the Authority.[2] Stead does not dispute that all of its causes of action arise "from the Reserve Fund."

_____

[2] Stead alleged one cause of action for breach of contract, two causes of action for negligence, one cause of action for breach of fiduciary duty, one

5

The Authority moved for summary judgment, arguing, among other things, that Stead's claims "were time-barred under [] section 911.2." The trial court granted the motion. In its order, the court held that Stead's claims were barred because: (1) Stead did not submit its claim to the correct entity under section 915; (2) Stead did not substantially comply with the claim presentation requirement because "there is no evidence to indicate actual receipt by the Authority's clerk, secretary, auditor, or board;" and (3) delayed discovery did not postpone the accrual of Stead's causes of action because "all the documents needed were available and/or public before the alleged 'discovery' of" Stead's "claims" and because "there was nothing secret or hidden about the existence of" Stead's "rights."

Stead timely appealed.[3]

## DISCUSSION

Stead does not dispute that its causes of action are subject to the claim presentation requirement found in the Government Claims Act, §§ 900 et seq. (§§ 905, 911.2, 915 & 945.4; *State of California v. Superior Court (Bodde)* (2004) 32 Cal.4th 1234, 1239 ["failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity"].) Stead also does not dispute that it had to present its claim for "money or damages" to the Authority "not later than one year after the accrual of [its] cause[s] of action." (§ 911.2, subd. (a).) Finally, Stead does not dispute that, absent the discovery rule, its causes of action would have accrued on September 2, 2016—the date that any monies in the Reserve

---

cause of action for declaratory relief, one cause of action for money had and received, and one cause of action for unjust enrichment.

[3] Rosebrook apparently did not file a notice of appeal.

6

Fund should have been returned to SNB or its successors under the Trust Agreement.

Instead, Stead contends that the discovery rule postponed the accrual of its causes of action against the Authority until August 2021 when it obtained the pleadings in the Tracy Gateway bankruptcy proceeding and was able to review both the Cost Sharing and Trust Agreements "together for the first time." Stead, however, should have suspected that it had a claim for "fees and costs incurred relating to the" Business Park development on January 28, 2015—the date SNB assigned its creditor claim in the Tracy Gateway bankruptcy proceeding to Stead. And Stead, upon exercising reasonable diligence, should have discovered its right to any monies in the Reserve Fund no later than November 2019. Because the earliest date that Stead even arguably presented its claim to the Authority is November 18, 2021—roughly *two years* after the latest possible accrual date under the discovery rule—its causes of action are time-barred under section 911.2, subdivision (a).

"We review the trial court's order on summary judgment de novo, liberally construing the evidence in favor of plaintiff[], the party opposing summary judgment." (*Hahn v. New York Air Brake LLC* (2022) 77 Cal.App.5th 895, 899.) "While resolution of the statute of limitation issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112 (*Jolly*).)

"[S]tatutes of limitation do not begin to run until a cause of action accrues." (*Fox v. Ethicon-Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806

7

(*Fox*).) "[A] cause of action accrues at 'the time when the cause of action is complete with all of its elements.' " (*Ibid.*)

"An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Fox*, *supra*, 35 Cal.4th at p. 807.) "A potential plaintiff 'discovers the cause of action . . . when . . . [it] at least "suspects . . . that someone has done something wrong" to [it], "wrong" being used, not in any technical sense, but rather in accordance with its "lay understanding." ' " (*Rosas v. BASF Corp.* (2015) 236 Cal.App.4th 1378, 1389, quoting *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397–398.)

Thus, a "plaintiff need not be aware of the specific 'facts' necessary to establish the claim" in order to trigger the applicable statute of limitations. (*Jolly*, *supra*, 44 Cal.3d at p. 1111.) Instead, the plaintiff need only have "inquiry notice" (*Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 361 (*Baxter*))—i.e., "a suspicion of wrongdoing, and therefore an incentive to sue" (*Jolly*, at p. 1111). Once the plaintiff suspects wrongdoing, that plaintiff has constructive knowledge of any facts that it "should have discovered" "in the exercise of reasonable diligence." (*Baxter*, at p. 361.) "So long as a suspicion exists, it is clear that the plaintiff must go find the facts; [it] cannot wait for the facts to find [it]." (*Jolly*, at p. 1111.) This is because "[e]very person who has actual notice of circumstances sufficient to put a prudent person upon inquiry as to a particular fact has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he or she might have learned that fact." (Civ. Code, § 19.)

Here, SNB had a suspicion of wrongdoing when it filed its creditor claim in the Tracy Gateway bankruptcy proceeding. Specifically, SNB had a suspicion that it was owed "fees and costs incurred relating to the" Business

8

Park development. And when Stead became the assignee of SNB's creditor claim on January 28, 2015, Stead acquired that same suspicion.[4] (See *Schmidt v. Trinut Farm Management, Inc* (2023) 92 Cal.App.5th 997, 1011, fn. 14 ["Appellant [], as assignee of the creditor claim . . . does . . . stand in the shoes of the assignor"].) Thus, Stead was on "inquiry notice" of any claim for fees and costs advanced by SNB for the Business Park development as of January 28, 2015. (*Baxter*, *supra*, 18 Cal.App.5th at p. 361.) This means that Stead, as of that date, had to "exercise of reasonable diligence" in discovering its claim to any of SNB's monies deposited in the Reserve Fund. (*Ibid.*)

---

[4] In footnote 4 of its opening brief, Stead asserts that it did not learn about the Assignment Agreement "until August of 2021." But Stead does not cite to anything in the record to support this assertion. Moreover, Stead admitted in its complaint that it entered into the Assignment Agreement with SNB on January 28, 2015. To the extent that Stead may have disputed that the assignment occurred on January 28, 2015, in its separate statement of undisputed material facts, Stead did not state "the nature of the dispute" or "describe the evidence that supports the position that the fact is controverted" as required by rule 3.1350(f)(2) of the California Rules of Court. (See also Code Civ. Proc., § 437c, subd. (b)(3) ["Each material fact contended by the opposing party to be disputed shall be followed by a reference to the supporting evidence"].) We may therefore treat the date of the assignment as an undisputed fact. (See *Oldcastle Precast, Inc. v. Lumbermens Mutual Casualty Co.* (2009) 170 Cal.App.4th 554, 570 [court may disregard disputes over facts that are not supported by evidence].) Finally, even if Stead did not learn about the Assignment Agreement until August 2021, it offers no explanation for the more than six-year gap between the date of the assignment and Stead's purported discovery of that assignment. Indeed, Stead, as a named creditor in the bankruptcy proceeding, should have learned about the assignment when SNB provided notice of it in that proceeding. Thus, Stead cannot establish reasonable diligence in discovering the assignment. (See *Community Cause v. Boatwright* (1981) 124 Cal.App.3d 888, 902 (*Community Cause*) [no reasonable diligence because the plaintiff "alleges no facts to explain the gap between the date . . . documents first became available and the alleged date of discovery"].)

Stead did not, however, do so.  As Stead admitted, it discovered its causes of action against the Authority when it obtained the pleadings in the Tracy Gateway bankruptcy proceeding in August 2021.  This, in turn, allowed Stead to review the Cost Sharing and Trust Agreements "together for the first time."  But the bankruptcy proceeding was closed in November 2019.[5]  Thus, Stead could have obtained the pleadings it needed to discover its causes of action no later than November 2019.

Despite this, Stead offers no explanation for its failure to obtain and review those pleadings by November 2019.  And under the undisputed facts, there is no reasonable explanation.  Indeed, it is undisputed that Stead was a separately named creditor and was assigned SNB's creditor claim in the Tracy Gateway bankruptcy proceeding.  Under these circumstances, "[r]easonable diligence would have included staying abreast of the record" in that proceeding.  (*Missionary Guadalupanas of Holy Spirit Inc. v. Rouillard* (2019) 38 Cal.App.5th 421, 438–439 [party moving for new trial did not "exercise[] reasonable diligence in discovering and producing evidence" available in the court records of a related case]; see also *Utility Cost Management v. Indian Wells Valley Water Dist.* (2001) 26 Cal.4th 1185, 1197 [diligent plaintiff seeking refund of capital facilities fees charged by public utility would have reviewed information made publicly available by that

___

[5] We, on our motion, take judicial notice of the docket in the bankruptcy proceeding, *In re Tracy Gateway LLC* (Bankr. E.D.Cal. 2013, case No. 2:13-bk-23517).  (Evid. Code, § 452, subd. (d); *Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1681, fn. 23 [taking judicial, on its own motion, of the docket in a United States Supreme Court case].)  According to the docket, the last filing in the proceeding occurred on November 24, 2019.  (See *Van Zant v. Apple Inc.* (2014) 229 Cal.App.4th 965, 971 & fn. 3 [taking judicial notice of the docket of a federal case to determine whether there has been any "subsequent litigation as of the filing of [the] opinion"].)

10

utility]; *Crabbe v. White* (1952) 113 Cal.App.2d 356, 360 [no reasonable diligence where the plaintiff failed to obtain a copy of the will "by a simple, routine process in everyday use by lawyers"].)  Yet, Stead waited until August 2021—over eight years after Tracy Gateway filed for bankruptcy and over six years after SNB provided notice of the assignment of its creditor claim to Stead—to obtain and review the pleadings in the bankruptcy proceeding.  Stead therefore did not exercise reasonable diligence.  (See *Community Cause*, *supra*, 124 Cal.App.3d at p. 902 [plaintiff cannot establish reasonable diligence because it "alleges no facts to explain the gap between the date these [public] documents first became available and the alleged date of discovery"].)  If Stead had acted with reasonable diligence, it would have obtained the pleadings and discovered its causes of action no later than November 2019, when the bankruptcy proceeding was closed.

Moreover, even if Stead's failure to obtain the pleadings in the Tracy Gateway bankruptcy proceeding by November 2019 is excusable, it still could and should have obtained the Cost Sharing and Trust Agreements no later than November 2019.

First, Stead could and should have obtained the Cost Sharing Agreement when it acquired SNB's creditor's claim on January 28, 2015. That claim was expressly based on the Cost Sharing Agreement.  In addition, Tracy Gateway identified that Agreement in its bankruptcy petition.  Yet, there is no evidence that Stead ever asked SNB or Tracy Gateway for a copy of the Agreement.  By failing to do so, Stead did not exercise reasonable diligence.  (See *Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 875 (*Miller*) [where, as here, the plaintiff "chose not to pursue their inquiry . . . we cannot assume that such an inquiry would have been unavailing"].)

11

Second, Stead could and should have obtained the Trust Agreement from the Authority by November 2019. This is because Rosebrook, Stead's co-plaintiff in this action, was able to obtain that Agreement from the Authority in November 2019. Once again, Stead does not explain why it could not have done the same.[6] Indeed, Stead admits that it never "engaged in any communications with the Authority in relation to the Developer's Reserve Fund since it became SNB's successor in interest." By failing to ask the Authority for any documents pertaining to "fees and costs incurred relating to" the Business Park development, Stead did not exercise reasonable diligence in obtaining the Trust Agreement as well. (See *Miller*, *supra*, 33 Cal.3d at p. 875.)

Thus, Stead, in exercising reasonable diligence, should have obtained and reviewed both the pleadings in the Tracy Gateway bankruptcy proceeding and the Cost Sharing and Trust Agreements by November 2019. Because Stead admitted that it discovered its claims against the Authority as soon as it obtained those pleadings and reviewed those Agreements, Stead's causes of action accrued no later than November 2019. Stead therefore had to present its government claim to the Authority by November 2020.

_____

[6] Stead asserts that the documentation provided by the Authority to Rosebrook in November 2019 "was both incomplete and inaccurate." But Stead admitted in its complaint that the Authority provided Rosebrook with the documents it requested "regarding the Bonds" in November 2019. These documents presumably included the Trust Agreement. Indeed, Stead acknowledged that Rosebrook received the "Trust document" and never disputes that Rosebrook obtained a copy of the Trust Agreement in November 2019. Instead, Stead only asserts that the "Trust document" provided in November 2019 did not inform Rosebrook "whether the [Reserve Fund] could or should be used to satisfy or be applied towards Rosebrook's outstanding [] Bond assessment balance, or if any amount thereunder could be due to Rosebrook."

12

(§ 911.2, subd. (a).) It did not. Rather, the earliest date that Stead could have even arguably presented its claim to the Authority is November 18, 2021—the date of its first letter to the Authority regarding the Reserve Fund. Stead's causes of action are therefore time-barred as a matter of law.

That the Authority continues to question Stead's claim, as SNB's successor, to the monies in the Reserve Fund does not help Stead. The accrual of a cause of action depends on the plaintiff's "suspicion of wrongdoing"—and not on the defendant's suspicion. (*Jolly*, *supra*, 44 Cal.3d at p. 1111.) Contrary to Stead's suggestion, a cause of action does not accrue when the defendant acknowledges that the cause of action may be meritorious. Otherwise, no cause of action would ever accrue if the defendant chooses to dispute liability.

Likewise, the fact that the documents provided to Rosebrook by the Authority in November 2019 did not allow Rosebrook to determine how it may use the Reserve Fund to reduce its liabilities for the Bonds makes no difference here. "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim" in order to trigger the statute of limitations. (*Jolly*, *supra*, 44 Cal.3d at p. 1111.) In any event, Stead admits that it discovered its claim to the Reserve Fund when it obtained the pleadings in the bankruptcy proceeding and reviewed the Cost Sharing and Trust Agreements "together for the first time." Because Stead could and should have obtained those pleadings and Agreements by November 2019 (see, *ante*, at pp. 10–12), Rosebrook's purported inability to discover the full scope of its claims against the Authority at that time is irrelevant.

Finally, *Gryczman v. 4550 Pico Partners, Ltd.* (2003) 107 Cal.App.4th 1 (*Gryczman*), is distinguishable.[7]  In that case, the plaintiff entered into an agreement giving him "the right of first refusal to purchase certain real property owned by" the defendant.  (*Id.* at p. 3.)  Under the agreement, the "plaintiff was entitled to written notice . . . of a bona fide offer" for the property from the defendant.  (*Id.* at p. 4.)  The defendant, however, sold the property to a third party without providing the plaintiff with notice.  (*Ibid.*)  When the plaintiff discovered the sale roughly three years later, he sued the defendant.  The trial court held that the plaintiff's claims were time-barred, but the court of appeal reversed based on the discovery rule.  In concluding that the rule postponed accrual until the plaintiff discovered the sale, the court of appeal found that "the failure to give [the] plaintiff notice of the happening of a certain event is both the act causing the injury and the act that caused [the] plaintiff not to discover the injury."  (*Id.* at p. 6.)  It also found that the plaintiff did not have "a duty to continually monitor public recordings to determine whether [the] defendant [] had accepted an offer on the property inconsistent with the terms of the first-refusal contract especially when [the defendant's] duty to give [the] plaintiff personal notice of such an offer was one of the terms bargained for in the contract."  (*Ibid.*)

Neither finding can be made here.  First, the Authority's alleged breach—i.e., its failure to return the monies in the Reserve Fund to SNB— did not "cause" Stead "not to discover [its] injury" because the Authority had

---

[7] Stead's reliance on *Comcast of Sacramento I, LLC v. Sacramento Metropolitan Cable Television Co.* (E.D.Cal. 2019) 250 F.Supp.3d 616, vacated and remanded on other grounds by 923 F.3d 1163 (9th Cir. 2019), is also misplaced.  That case did not involve the discovery rule.  Instead, the district court only determined what action triggers the statute of limitations for a conversion claim—a claim that Stead did not allege here.  (*Id.* at p. 622.)

no contractual duty to notify SNB about those monies. (*Gryczman, supra,* 107 Cal.App.4th at p. 6.) Second, SNB and Stead, as SNB's assignee, should have been aware of any fees and costs that SNB had advanced for the Business Park development, including the Reserve Fund deposit, that may have been subject to reimbursement under the Cost Sharing Agreement. Finally, Stead, both as a named creditor and as the assignee of SNB's creditor claim under the Cost Sharing Agreement, had a duty to monitor the pleadings in the Tracy Gateway bankruptcy proceeding. (See, *ante*, at pp. 10–11.)

Accordingly, we find that Stead's causes of action accrued no later than November 2019 under the discovery rule. Stead did not, however, submit a claim to the Authority by November 2020. Its causes of action against the Authority are therefore time-barred under section 911.2, subdivision (a). Because we affirm on this ground, we do not address the Authority's other arguments in support of summary judgment.

## DISPOSITION

The judgment is affirmed.

CHOU, J.

We concur.

JACKSON, P. J.

SIMONS, J.

(A169218 – *Stead Financial, Inc. v. California Statewide Communities Development*)